USCA1 Opinion

 

 March 20, 1995 [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ___________________ No. 94-1896 EDWARD SACK, Plaintiff, Appellant, v. LLOYD BENTSEN, SECRETARY OF THE DEPARTMENT OF TREASURY, Defendant, Appellee. __________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Nathaniel M. Gorton, U.S. District Judge] ___________________ ___________________ Before Torruella, Chief Judge, ___________ Boudin and Stahl, Circuit Judges. ______________ ___________________ Edward Sack on brief pro se. ___________ Donald K. Stern, United States Attorney, and Cheryl L. _________________ __________ Conner, Assistant U.S. Attorney, Civil Division, on brief for ______ appellee. __________________ __________________ Per Curiam. Plaintiff Edward Sack commenced this civil __________ action against the Secretary of the Treasury after the Internal Revenue Service (IRS) rejected him for a position as an Estate and Gift Tax Attorney in its Boston office. Sack alleged that the IRS's system of rating the applicants for these positions violated the Age Discrimination in Employment Act (ADEA), 29 U.S.C. 621 et seq., and the Veterans' __ ____ Preference Act, 5 U.S.C. 3311, 3313. Both sides moved for summary judgment, and the district court granted judgment for the Secretary. Sack now appeals. We affirm. I. BACKGROUND  ______________ The following facts are undisputed. Sack is a veteran who graduated from law school in 1959. He last worked as an attorney in 1986. In November 1990, the IRS announced that it was accepting applications for Estate and Gift Tax Attorney positions (Grades 9 and 11) in its Boston and Portsmouth offices. Sack was 58 years old when he sought this position. A total of 151 persons submitted applications. All applicants were evaluated and assigned a numerical score pursuant to the Single Agency Qualification Standard (SAQS) for Attorney (Estate Tax) and Law Clerk (Estate Tax) described in the IRS's Qualifications Standards and Guidelines Handbook.1  ____________________ 1. Applicants were not required to complete a written examination. Rather, they were rated based on the extent and quality of their education, experience and training. (App. -2- Under the SAQS, all applicants who met the basic minimum qualifications for the positions received a base score of 70 points. Additional points could be added to an applicant's base score if he or she possessed recent education or experience. For example, an applicant could receive an additional 15 points if he or she had either completed law school, been admitted to a bar, or completed at least 6 months of progressively responsible legal experience within the past 12-18 months. These points were also available to applicants who had completed accounting education or experience within similar time frames. Ten points could be added to an applicant's score if the applicant's legal education or professional legal or accounting experience had been obtained within the past 2-4 years. However, the SAQS did not provide for the award of additional base points for legal experience or education completed more than 3 years from the date of the application. (App. 46-47).2 Using this rating system, IRS Managers Richard Murray and Thomas Fleming and Branch Chief Richard Teed ranked the applicants for the Estate Tax Attorney positions. Sack, who was employed as a salesman for Lechmere when he submitted his  ____________________ 42). 2. Bonus points were available if an applicant had special qualifications, e.g. excess professional legal or accounting experience. In addition, section 905.218(3) of the SAQS required the IRS to observe veterans' preference procedures in selecting estate tax attorneys. -3- application, received a total numerical score of 76. He was given 70 points for having a law degree and 5 points for being a veteran under 5 U.S.C. 3309.3 Sack was only given 1 point for his past legal experience, which was completed beyond the periods for which the 10-15 additional base points were available.4 Sack's was the third lowest score among all the applicants who were considered for a position in Boston. Applicants whose scores were 90 or above were deemed the "Best Qualified Candidates." Approximately 20 of these candidates were interviewed, including 5 who were between the ages of 55 and 60. Ultimately six persons were hired for the Boston office and two were hired for the Portsmouth office. Seven of the eight new hires had received an additional 15  ____________________ 3. 5 U.S.C. 3309(2) authorized the addition of five points to the rating scores of veterans who, like Sack, were preference eligible under 5 U.S.C. 2108(3)(A). 4. Sack's application indicated that he last worked as a self-employed attorney between May 1985 and December 1986. He was unemployed between January 1987 and September 1989, when he began to work for Lechmere. Between 1960 and 1962, Sack worked as an attorney for the IRS issuing rulings on educational and charitable organizations that sought federal income tax exemptions. He was employed as an associate counsel for a life insurance company between 1971 and 1978, during which time he reportedly dealt with estate and gift taxes. Sack's remaining experience is characterized by various short-term attorney jobs and periods of unemployment. -4- points for completing law school within the past 18 months.5 Two of the eight persons who were hired were older than Sack. Sack was notified that he had not been selected for a position by letter dated February 1, 1991.6 Shortly thereafter, Sack contacted an Equal Employment Opportunity Counselor. On or about April 1, 1991, Sack filed a formal Individual Complaint of Employment Discrimination with the Department of the Treasury (DOT). (App. 57). He charged that the provisions of the SAQS that allowed 15 points to be added to the scores of applicants who had recently graduated from law school discriminated against him on the basis of age because they obviously inured almost exclusively to the benefit of younger applicants. Sack also alleged that these provisions effectively nullified the veterans' preference rules because they allowed additional points to be granted to a nonveteran who had the same amount of legal education as a veteran. Sack's complaint was accepted and investigated by the DOT's Chicago Regional Complaints Center (RCC). On September 6, 1991, the RCC issued a Proposed Disposition Letter which found no discrimination. Sack requested a hearing before an administrative law judge. He later  ____________________ 5. One received these points for receiving an LLM within the past year. 6. The letter stated, "This is no reflection on your qualifications. All candidates were extremely well qualified, ...." -5- withdrew that request and requested a final agency decision on the record. (App. 101, 108). On April 20, 1992, after Sack's administrative complaint had been pending for over a year without a final decision from the DOT, Sack commenced this civil action. On February 3, 1993, the DOT issued a Final Decision that again found no discrimination. Shortly after the DOT issued this decision Sack moved for summary judgment. His motion was supported by the pleadings, answers to interrogatories, and various documents related to the IRS's application process and Sack's administrative complaint.7 Sack argued that the evidence established a prima facie case of age discrimination through disparate treatment under the familiar McDonnell Douglas __________________ formula and that the IRS failed to identify a legitimate nondiscriminatory reason for its point-rating system. He specifically charged that the reasons that the IRS had offered in support of its rating system were inconsistent and contained admissions of age discrimination.8 And while Sack  ____________________ 7. Among Sack's supporting documents were his application for federal employment, relevant excerpts from the SAQS, Sack's complaint (and supporting affidavit) to the DOT, an excerpt from the DOT's report of investigation on that complaint, the DOT's 9/6/91 Proposed Disposition Letter, and the DOT's 2/3/93 Final Decision. 8. For example, the DOT's report of investigation indicated that the SAQS compensated recent law school graduates for the recency of their education so that they could numerically compete with candidates who earned points for recent experience. The DOT's Final Decision stated, inter alia, _____ ____ that Sack was, "correct in his assertion that a policy of -6- expressly disclaimed reliance on the disparate impact theory of relief, he also attacked the DOT's Proposed Disposition Letter, which concluded that there was no discrimination under the disparate impact analysis.9 S a c k a l s o maintained that the granting of 15 additional points to recent law school graduates while denying same to him constituted age discrimination as a matter of law. He claimed that he, too, was entitled to 15 additional base points for his legal education or experience. Sack noted that had he been awarded these points, his score would have tied the scores of two of the applicants who had received positions, and he, as a veteran, would have been entitled to be hired first under 5 U.S.C. 3313.10 Finally, Sack argued that the IRS's failure to award him 15 additional points  ____________________ granting credit for recent graduation from law school affects a category of persons predominantly under 40." Sack argued that these comments, which were taken out of context, constituted admissions of age discrimination. 9. Sack argued that the DOT erred in concluding that the SAQS did not result in age discrimination simply because two persons older than him were hired. He maintained that the DOT's analysis relied on a sample that was too small to be reliable for purposes of determining whether the SAQS had a disparate impact. However, Sack's primary argument was that the SAQS were obviously discriminatory. Thus, he maintained that the DOT erred in applying the disparate impact test. 10. 5 U.S.C. 3313 prescribes how the lists of applicants for federal positions are to be prepared. The statute provides, in relevant part, that, "[t]he names of preference eligibles shall be entered ahead of others having the same rating." -7- diminished his veterans' preference and violated 5 U.S.C. 3311.11 The Secretary filed an opposition to Sack's motion which included a cross-motion for summary judgment. The Secretary's motion was supported by affidavits from several IRS employees and the records generated by the IRS's investigation of Sack's administrative complaint. The Secretary argued, inter alia, that Sack failed to prove a _____ ____ prima facie case of age discrimination through disparate treatment. While the Secretary conceded that Sack was within the protected age group and minimally qualified for the position, he argued that the McDonnell Douglas test was not _________________ satisfied because two persons older than Sack had been hired. Alternatively, the Secretary maintained that even if Sack had made out a prima facie case, the IRS had successfully rebutted it with evidence that the IRS had a legitimate business interest in using a rating system that favored  ____________________ 11. 5 U.S.C. 3311 provides, in relevant part: In examinations for the competitive service in which experience is an element of qualification, a preference eligible is entitled to credit - * * * (2) for all experience material to the position for which examined, including experience gained in religious, civic, welfare, service and organizational activities, regardless of whether he received pay therefor. -8- recent over remote education and experience.12 The Secretary also argued that Sack had failed to prove that the point-rating system was a pretext for unlawful discrimination and that the Veterans' Preference Act did not give Sack a cause of action. Thus, the Secretary claimed that he was entitled to summary judgment.13 On July 21, 1994, the district court issued a decision which granted the Secretary's cross-motion for summary judgment. The court eschewed the jurisdictional issues and held that Sack failed to make out a prima facie case of age discrimination through disparate treatment. Because Sack's score did not reach the 90-point threshold of the "Best  ____________________ 12. The DOT submitted an affidavit from Amy Chassid, chief of one of the IRS's organizational and planning sections. She averred that the SAQS gave greater weight "to those applicants who demonstrate current familiarity with legal matters ... by either experience or education." (emphasis ________________________________ supplied). She further averred that it was reasonable for the IRS to prefer applicants with recent rather than remote experience or education because recent education or experience was easier to evaluate and could reflect up-to- date knowledge of legal principles and agency practices. In addition, affidavits from the IRS supervisors who actually ranked the applicants (Murray and Fleming) indicated that Sack did not receive additional points because he had been out of practice for several years and thus lacked recent legal experience. 13. The Secretary also argued that the district court lacked jurisdiction over Sack's claims because Sack failed to exhaust his administrative remedies and further failed to file a timely complaint with advance notice to the EEOC as required by 29 U.S.C. 633a(d). Sack filed a reply to the Secretary's opposition which argued that this case should not be dismissed for the failure to exhaust administrative remedies and otherwise reiterated Sack's previous arguments. -9- Qualified Candidates", the district court reasoned that Sack was not qualified for the position and did not address Sack's contention that the IRS's system of awarding these points violated the ADEA. The court also concluded that the Veterans' Preference Act did not require that 15 additional points be added to Sack's base score simply because he was a veteran. Sack filed a timely notice of appeal from this ruling. II. DISCUSSION ______________ We afford plenary review to the order granting the Secretary's motion for summary judgment and review the record in the light most favorable to Sack. Mesnick v. General _______ _______ Electric Co., 950 F.2d 816, 822 (1st Cir. 1991). "In an ADEA ____________ failure to hire discrimination suit, plaintiff bears the ultimate burden of persuading the factfinder that the employer illegally discriminated against plaintiff by refusing to hire plaintiff on the basis of his/her age." Woods v. Friction Materials, Inc., 30 F.3d 255, 259 (1st Cir. _____ ________________________ 1994). Where, as here, the plaintiff elects to proceed on a disparate treatment theory, he must prove that the IRS harbored a discriminatory motive when it decided not to hire him. See, e.g., Hazen Paper Co. v. Biggins, 113 S. Ct. 1701, ___ ____ _______________ _______ 1705 (1993)(proof of discriminatory motive is critical); Holt ____ v. Gamewell Corp., 797 F.2d 36, 37 (1st Cir. 1986)(similar). ______________ Absent direct evidence of discrimination, to establish a -10- prima facie case of age discrimination based on a failure to hire, the "plaintiff must show that (1) s/he is a member of a protected class, (2) s/he applied and was qualified for the position in question, (3) that despite his/her qualifications, s/he was rejected, and (4) that, after rejection, the position remained open and the employer continued to seek applicants from persons of the complainant's qualifications." Woods, 30 F.3d at 259. When a _____ plaintiff adduces sufficient evidence to establish a prima facie case, an inference of discrimination arises, and the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its decision not to hire the plaintiff. Id. at 720.14 And "once the employer has ___ proffered a legitimate, nondiscriminatory reason for its adverse employment decision, the presumption created by the ...[plaintiff's] prima facie case disappears, and the burden falls back upon the ... [plaintiff] to prove that the reason advanced by the employer for the adverse employment action constituted a mere pretext for unlawful age discrimination." LeBlanc, 6 F.3d at 842. "To meet this burden, the claimant _______  ____________________ 14. "The employer's obligation is simply one of production." LeBlanc v. Great American Ins. Co., 6 F.3d 836, 842 (1st Cir. _______ _______________________ 1993). That is to say, the defendant is not required to persuade the factfinder that it was, in fact, motivated by the proffered reason and not by a discriminatory one. See, ___ e.g., Oliver v. Digital Equipment Corp., 846 F.2d 103, 108 ____ ______ _______________________ (1st Cir. 1988); Loeb v. Textron, Inc., 600 F.2d 1003, 1011 ____ _____________ (1st Cir. 1979). The burden of persuasion remains with the plaintiff at all times. LeBlanc, id.  _______ ___ -11- must prove both that the employer's articulated reason is ____ false, and that discrimination was the actual reason for its employment action." Woods, 30 F.3d at 260. Thus, to avoid _____ summary judgment, the plaintiff must "elucidate specific facts which would enable a jury to find that the reason given was not only a sham, but a sham intended to cover up the employer's real motive: age discrimination." Medina-Munoz v. ____________ R.J. Reynolds Tobacco Co., 896 F.2d 5, 9 (1st Cir. 1990). _________________________ On appeal, Sack argues that the district court erred in holding that he was not qualified for the Estate Tax Attorney position since the Secretary conceded that he was at least minimally qualified by virtue of his law degree and the district court failed to address his contention that the point-rating system unlawfully discriminated against him. Sack also maintains that the SAQS contain direct evidence of discrimination because they award more points for recent than remote education and experience and that the DOT's submissions admitted as much. Finally, Sack reiterates his contention that the IRS's point-rating system is a subterfuge to deprive veterans of their veterans preference in violation of 5 U.S.C. 3311, 3313.15  ____________________ 15. Sack also contends that he should be deemed to have exhausted his administrative remedies because the time for filing a final agency decision had elapsed before he filed suit. As it is clear that Sack is not entitled to relief on the merits, we need not address the jurisdictional issues. See Norton v. Mathews, 427 U.S. 524, 530-32 (1976). ___ ______ _______ -12- At the outset we reject Sack's suggestion that the IRS's point-rating system evinces direct evidence of age discrimination simply because it allows additional base points to be awarded to applicants with recent legal education or experience. Nothing in the SAQS makes an applicant's score contingent upon his or her age. "The ADEA 'requires the employer to ignore an employee's age ... it does not specify further characteristics that an employer must also ignore.'" E.E.O.C. v. Francis W. Parker School, 41 _________ ________________________ F.3d 1073, 1076 (7th Cir. 1994)(citation omitted). We further see nothing in any of the DOT's affidavits or decisions which constitute an admission of age discrimination.16 Thus, as direct evidence of age discrimination is lacking, Sack's case hinges upon whether he has met his burden under the McDonnell Douglas formula.  _________________ While the district court held that Sack failed to establish a prima facie case because he was not qualified for the position, the DOT conceded that Sack was at least minimally qualified by virtue of his law degree. It is also  ____________________ 16. While the DOT's Final Decision observed that a policy of granting credit for recent graduation from law school affected persons predominantly under forty, it went on to note that the SAQS also give credit for recent legal experience. Sack was not eligible for the latter because had been out of practice for several years when he applied for the Estate Tax Attorney position. Thus, the DOT concluded that Sack would not have been selected even if the SAQS did not grant additional base points for recent graduation from law school. This in no way implies an admission of age discrimination. (App. 106). -13- undisputed that Sack was within the protected age group, that he was rejected despite his qualifications, and that six of the eight persons who were ultimately hired were under 40. This circuit does not require plaintiffs to prove that persons outside the protected age group were hired in order to establish a prima facie case of age discrimination. See, ___ e.g., Sanchez v. Puerto Rico Oil Co., 37 F.3d 712, 719 n.7 ____ _______ ____________________ (1st Cir. 1994). Under these circumstances, we shall assume that Sack's showing was sufficient to raise a presumption of discrimination under McDonnell Douglas. The burden then __________________ shifted to the Secretary to articulate a legitimate, nondiscriminatory reason for the IRS's decision not to hire Sack. The Secretary met this burden by submitting evidence that the applicants who were hired were more qualified than Sack because they had more current legal knowledge, as evidenced by their recent legal education. Sack was ranked below these individuals because he had not practiced law in several years and thus was ineligible for additional points based on recent legal experience. Faced with this showing, it then became Sack's burden to prove that the IRS's point- rating system rewarded recent education or experience as a proxy or pretext by which to accomplish unlawful age discrimination. Sack failed to make this essential showing. Recent legal education or experience, like years of service, -14- is analytically distinct from age. The IRS could reward the former without necessarily engaging in unlawful age discrimination. Cf. Hazen Paper Co. v. Biggins, 113 S. Ct. at ___ _______________ _______ 1707. To prove that the IRS relied on these criteria to accomplish age discrimination, Sack had to show that the IRS and/or its employees designed the SAQS to reward recent legal education or experience because it was assumed that this would eliminate older applicants. But there was no evidence which even suggested that the SAQS were enacted with such a discriminatory motive. Rather, the record indicates that the SAQS provided that additional base points could be added to the scores of recent law school graduates to enable them to compete with the scores of practicing attorneys who would be eligible for additional base points due to their experience, points for which Sack was ineligible because he had not practiced law in several years. Thus, rather than giving recent law school graduates an unfair edge, the SAQS appear to be designed to level the playing field. In any event, neither recent law school graduation nor recent years of experience are so correlated with age as to suggest that the IRS had the discriminatory motive critical to Sack's disparate treatment claim. To be sure, it may be more likely that most of the applicants eligible for additional base points because they recently completed law school will be under forty. But -15- "decisions based on criteria which merely tend to affect workers over the age of forty more adversely than workers under forty are not [necessarily] prohibited." E.E.O.C. v. ________ Francis W. Parker School, 41 F.3d at 1077. The fact that _________________________ additional base points may be awarded for recent legal education does not indicate that the SAQS are a pretext for age discrimination, for the SAQS also allow additional base points for recent legal experience and admission to a bar. These criteria apply to individuals who cannot be said to be more likely to be under forty. The fact that two of the applicants who were hired were older than Sack further undermines Sack's contention that his rejection resulted from age discrimination.17 Thus, the totality of the circumstances compels us to reject Sack's contention that the SAQS use recent legal education or experience as a proxy for age. Compare Massarsky v. General Motors Corp., 706 F.2d _______ _________ _____________________ 111, 119 (3rd Cir.), cert. denied, 464 U.S. 937 _____ ______ (1983)(similar). Accordingly, we conclude that Sack has  ____________________ 17. While we do not require plaintiffs to prove that only persons outside the protected age group were hired to make out a prima facie case, we have observed that, "as a _____ _____ practical matter, it may be unlikely that a plaintiff who was not supplanted by a younger individual will succeed in an ADEA suit...." Freeman v. Package Machinery Corp., 865 F.2d _______ ________________________ 1331, 1335 n.2 (1st Cir. 1988). The evidence here strongly militates against Sack. -16- failed to make establish a case of age discrimination through disparate treatment.18 We also agree with the district court's conclusion that Sack was not entitled to relief under the Veterans' Preference Act. Nothing in any of the statutes Sack has cited gives him a federal cause of action, and we decline to imply one where the record discloses that Sack received the preference he was entitled to when the IRS added five points to his score under 5 U.S.C. 3309. The Veterans' Preference Act does not "cloak veterans with any 'penumbral rights;' its provisions are necessarily specific, and for plaintiffs to benefit therefrom they must show themselves to be clearly within the intended ambit of... [its] provisions." Crowley v. _______ United States, 527 F.2d 1176, 1182-83 (Ct. Claims _______________ 1975)(citation omitted). Sack has failed to show that 5 U.S.C. 3309, 3311, or 3313 required the IRS to award him fifteen additional points. Accordingly, the judgment of the district court is affirmed. ________  ____________________ 18. As Sack has expressly disclaimed reliance on the disparate impact theory, we confine our analysis to the disparate treatment test. However, we note that the DOT's conclusion that Sack also failed to prove disparate impact is supported by the record. -17- -18-