Bello v. Michie Co.                    CV-96-433-B    01/06/98

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

**Adamu S. Bello**

    **v.**                                    Civil No. 96-433-B

**The Michie Co., A Division**
**of Reed Elsevier, Inc.**

### MEMORANDUM AND ORDER

Adamu S. Bello brings several employment related claims against the Michie Company ("Michie"), alleging that Michie discriminated against him in denying him a position for which he had interviewed. Michie moves for summary judgment on Count II (discrimination based on race, national origin, and sex in violation of the Title VII of the Civil Rights Act, 42 U.S.C.A. § 2000e et seq. (1994)), Count III (discrimination based on age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C.A. §§ 621-34 (1985 & Supp. 1997)), and Count IV (discrimination based on race and national origin in violation of the Civil Rights Act of 1866, 42 U.S.C.A. § 1981 (1994)("Section 1981")).[1] Michie argues that it is entitled to summary judgment even if Bello has established a prima facie case of discrimination because: (1) it has carried its burden of producing evidence

---

[1] Michie does not move for summary judgment on Count I of Bello's complaint (discrimination based on disability in violation of the Americans with Disabilities Act, 42 U.S.C.A. § 12112 (1995)).

of a nondiscriminatory reason for not hiring him; and (2) Bello has failed to produce enough evidence to permit a rational factfinder to conclude that he was not hired because of his age, race, national origin, or sex. For the reasons stated below, I grant the motion with respect to Bello's sex and age discrimination claims and deny the motion with respect to Bello's race and national origin discrimination claims.

## I. BACKGROUND

Plaintiff Bello is Nigerian born African-American male. He is in his mid-forties and, as a result of being inflicted with polio as a child, is disabled and walks with a limp. Defendant Michie, a legal publishing company headquartered in Charlottesville, Virginia, is a division of Reed Elsevier, Inc. ("Reed"), a British corporation.

From 1992 to 1995, Bello worked as an salesperson for Butterworth Legal Publishers ("Butterworth"), another division of Reed. From November 1992 to July 1993, Bello worked in Butterworth's San Diego, California sales office. Shortly after Butterworth closed its San Diego telemarketing office in July 1993, Bello was offered a position at Butterworth's Salem, New Hampshire sales office, where he began working in October 1993.

In 1994, Reed acquired Michie and, in December of that year, announced that it intended to consolidate the Michie and Butterworth operations. As a result, Reed closed Butterworth's

2

Salem office in May 1995. Reed notified all members of Butterworth's Salem workforce, including Bello, that they would be laid off with the closing of the Salem office. Reed did, however, afford those to be laid off the opportunity to interview for open positions with Michie.

Bello applied for a higher level sales position that had opened up in Michie's San Diego office. Based on his positive track record in sales with Butterworth and his substantial experience in the San Diego legal publishing market, Bello thought that he was ideally suited for that position. In March or April 1995, several Michie executives interviewed Bello and two other candidates for the San Diego sales position. Ultimately, Michie offered the position to Patricia Lakos, a twenty-four-year-old white woman with little sales experience. After exhausting the relevant administrative remedies, Bello filed his complaint challenging Michie's hiring decision as discriminatory.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate if the record, taken in the light most favorable to the non-moving party, shows that no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Commercial Union Ins. Co v. Walbrook Ins. Co., 7 F.3d 1047, 1050 (1st Cir. 1993). A "material fact" is one "that might affect the outcome of the suit under the governing law," and a genuine

factual issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In order to survive summary judgment, "the nonmoving party must produce evidence on which a reasonable trier of fact, under the appropriate proof burden, could base a verdict for it; if that party cannot produce such evidence, the motion must be granted." Ayala-Gerena v. Bristol Meyers-Squibb Co., 95 F.3d 86, 94 (1st Cir. 1996) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "Even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." Medina-Munoz v. R.J. Reynolds Tobacco, Inc., 896 F.2d 5, 8 (1st Cir. 1990).

## III.  DISCUSSION

Bello bases his claims on a disparate treatment theory. Accordingly, St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993), and its First Circuit progeny govern the allocation of the burdens of persuasion and production.[2]  See LeBlanc v. Great

_____

[2] Bello argues that direct evidence supports a finding of discriminatory animus in Michie's decision not to hire him.  If this were such a case, then the burden shifting framework described in Hicks would not apply.  See Smith v. F.W. Morse & Co., Inc., 76 F.3d 413, 421 (1st Cir. 1996). However, I need not at this point determine whether Bello's evidence of discriminatory animus is direct or indirect because my ultimate determination of Michie's motion for summary judgment would be the same under either analytical framework.  See id. at 421

**4**

American Ins. Co., 6 F.3d 836, 842-43 (1st Cir. 1993), cert. denied, 511 U.S. 1018 (1994).  Bello must first establish a prima facie case of discrimination by proving by a preponderance of the evidence that: (1) he was a member of a protected class; (2) he applied for a position for which he was qualified; and (3) he was rejected under circumstances which give rise to an inference of unlawful discrimination.[3]  See Hicks, 509 U.S. at 506; Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 & n.6 (1981); Woodman v. Haemonetics Corp., 51 F.3d 1087, 1091 (1st Cir. 1995).

While the burden of persuasion remains with Bello throughout this case, a presumption of discrimination arises from proof of his prima facie case.  Hicks, 509 U.S. at 506-07.  In order to

_____

(reasoning that "courts often wisely decide to sidestep difficult theoretical questions if answers to them are not essential to proper resolution of a given case.").  Regardless of whether plaintiff's evidence of discriminatory animus is characterized as direct evidence or circumstantial evidence, that evidence must be sufficient to permit a reasonable factfinder to conclude that the defendant's decision not to hire him was motivated at least in part by discriminatory animus.  See e.g., Price Waterhouse v. Hopkins, 409 U.S. 275, 276 (1989) ("In my view, in order to justify shifting the burden on the issue of causation to the defendant, a disparate treatment plaintiff must show by direct evidence that an illegal criterion was a substantial factor in the decision.") (O'Connor, J., concurring).  In this case, plaintiff has produced insufficient evidence to permit a reasonable jury to find in his favor on his sex and age discrimination claims regardless of whether that evidence is characterized as direct or circumstantial.

[3]  Although this burden-shifting framework initially arose in the context of a Title VII case, see McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), it applies with equal force in Section 1981 cases, see Ayala-Gerena, 95 F.3d at 95, and ADEA cases, see Mesnick v. General Elec. Co., 950 F.2d 816, 823 (1st Cir. 1991).

rebut this presumption, Michie must produce evidence which, "taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action." Id. at 509 (emphasis omitted). If Michie fails to meet this burden, then Bello is entitled to recovery. See id. If, however, Michie meets its burden of production, the presumption of discrimination "'drops out of the picture,'" Woodman, 51 F.3d at 1091 (quoting Hicks, 509 U.S. at 507), and, in order to maintain his case, Bello must then proffer sufficient evidence, if believed, to show that the Michie's stated reason "was but a pretext for . . . discrimination." Medina-Munoz, 896 F.2d at 9 (quoting Freeman v. Package Machinery Co., 865 F.2d 1331, 1336 (1st Cir. 1988)).

Though Hicks recognizes that an employee always remains responsible for proving that her employer dismissed her because of a protected attribute, it also provides in dicta that:

> The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons will permit the trier of fact to infer the ultimate fact of intentional discrimination.

509 U.S. at 511 (emphasis in original). At least one circuit interprets this dicta as entitling a plaintiff to submit her claim to the jury whenever she has offered sufficient evidence to prove her prima facie case and demonstrate that the employer's reason for its action was false. See Anderson v. Baxter Healthcare Corp., 13 F.3d 1120, 1123-24 (7th Cir. 1994). The First Circuit, however, has determined that proof of a prima

facie case and evidence of pretext will suffice only if the factfinder could reasonably conclude from all of the evidence presented that discriminatory animus was the real reason for the employer's action. Barbour v. Dynamics Research Corp., 63 F.3d 32, 39 (1st Cir. 1995); Udo v. Tomes, 54 F.3d 9, 13 (1st Cir. 1995); Smith v. Stratus Computer, Inc., 40 F.3d 11, 16 (1st Cir. 1994), cert. denied, 514 U.S. 1108 (1995); Woods v. Friction Materials, 30 F.3d 255, 260-61 n.3 (1st Cir. 1994). I apply the First Circuit standard in evaluating Bello's claim.

Michie does not challenge Bello's prima facie case with regard to any of his claims. Accordingly, to decide whether to grant Michie's motion for summary judgment, I must resolve two issues. First, I must determine whether Michie has met its burden of producing evidence which, "taken as true, would permit the conclusion that there was a nondiscriminatory reason" for not hiring Bello. Hicks, 509 U.S. at 509 (emphasis omitted). Second, if Michie has met its burden, I must determine whether, interpreting the record in the light most favorable to Bello, a rational factfinder could disbelieve Michie's explanation and infer that Michie intended to discriminate. See Stratus Computer, 40 F.3d at 16; Woods, 30 F.3d at 261 n.3.

A. **Michie's Explanation For Not Hiring Bello**

In justifying its decision not to hire Bello, Michie relies primarily on the deposition testimony of several members of its management who were responsible for deciding whom to hire for the San Diego sales post. In particular, Michie relies on the

**7**

testimony of Tom Hintz, Michie's Director of Sales and the executive primarily responsible for making that hiring decision. Hintz claims that there were a number of reasons for his decision to hire Lakos rather than Bello. First, he states that Lakos performed better than Bello at the personal interview stage of the hiring process. Second, Hintz maintains that Butterworth's 1994 sales figures show that Lakos had higher annual monthly sales than did Bello and that Bello had an excessive return rate of 50%, twice that of Lakos. Third, Lakos had experience selling CD-ROM products and had occupied the position of "blended sales representative" at Butterworth, a higher level position than the telemarketing post Bello had occupied. Finally, Hintz was concerned about Bello's work history because his resume indicated a frequent turnover of positions.

Accepting Michie's explanation as true, it is sufficient to permit a rational factfinder to conclude that the company had a nondiscriminatory reason for dismissing Bello. Cf. Woodman, 51 F.3d at 1089-90, 1092 (defendant met burden of production by producing some evidence of employee's poor performance, notwithstanding evidence of laudatory reviews). Therefore, Michie has carried its "'relatively light'" burden of production. Barbour, 63 F.3d at 38 (quoting Fuentes v. Perksie, 32 F.3d 759, 763 (3d Cir. 1994)).

B. **Bello's Evidence of Intentional Discrimination**

Having satisfied its burden of production, Michie will be entitled to summary judgment unless Bello can produce enough

8

evidence to convince a rational factfinder that Michie's explanation is a mere pretext for discrimination. See Hicks, 509 U.S. at 509. Bello attempts to meet this burden by rebutting Michie's articulated reasons for declining to hire him. To this end, Bello offers evidence of how his experience, level of performance, and qualifications made him an ideal candidate for the San Diego job. Without further elaboration, I find that such evidence is sufficient to permit a rational factfinder to disbelieve Michie's proffered reason for declining to hire Bello. See Stratus Computer, 40 F.3d at 16 (plaintiff's evidence of satisfactory job performance may be sufficient to rebut defendant's evidence of poor performance).

In order to avoid summary judgment, however, Bello must also set forth sufficient evidence which, if believed, would permit a rational factfinder to conclude that the true reason for Michie's decision not to hire him was discriminatory. See Hicks, 509 U.S. at 511; Stratus Computer, 40 F.3d at 16. I examine Bello's proffer of evidence with respect to each claim in turn.

(1) Bello's ADEA Claim

Other than the fact that the person who was ultimately hired for the San Diego sales job, Lakos, is younger than he is, Bello fails to set forth any credible evidence that age discrimination played any role at all in Michie's decision to not award the job to him. The only evidence to which Bello points in support of his age discrimination claim is a statement that Butterworth's acting president, Mark Radcliffe, made to him in an attempt to

**9**

explain why he did not get the job. In that conversation, Radcliffe explained the rationale behind the hiring decision by stating that Tom Hintz, the primary decisionmaker, "probably . . . likes blondes" and was concerned about Bello's limp. Although that statement could potentially give rise to an inference that race, national origin, sex, or disability played a role in the decision, it would not permit a rational factfinder to conclude that age was a motivating factor in the decision to hire Lakos rather than Bello. See Goldman v. First Nat'l Bank of Boston, 985 F.2d 1113, 1116 (1st Cir. 1993) (reasoning that conclusory allegations, improbable inferences, and un-supported speculation do not suffice to withstand summary judgment). Therefore, I find that Bello has not carried his burden with respect to his ADEA claim and that, as a result, Michie is entitled to summary judgment with respect to this claim.

(2) Bello's Title VII Sex Discrimination Claim

In support of his Title VII sex discrimination claim, Bello points to the fact that the person who was ultimately hired for the San Diego sales position is a woman. In addition, Bello again points to the explanation for the employment decision that Radcliffe had given him, namely, that the primary decisionmaker "probably . . . likes blondes." Admittedly, this remark could conceivably give rise to an inference of discriminatory animus based on Bello's gender. I find, however, that any such inference drawn from this isolated comment, without more, is simply too speculative in nature to allow a rational factfinder

**10**

to conclude that impermissible sex discrimination was the true motivating factor behind Michie's decision not to hire him. See Goldman, 985 F.2d at 1116 (reasoning that improbable inferences do not suffice to withstand summary judgment). Therefore, I find that Bello has not carried his burden with respect to his Title VII sex discrimination and that, as a result, Michie is entitled summary judgment with respect to this claim.

(3) Bello's Title VII and Section 1981 Race and National Origin Discrimination Claims

In support of his Title VII and Section 1981 race and national origin claims, Bello once again points to Radcliffe's "probably . . . likes blondes" comment. In addition, however, Bello relies on two other pieces of evidence. First, he maintains that, in that same conversation with Radcliffe, Radcliffe discouraged him from applying for an open sales position in Alabama because of his African-American ancestry. Although Radcliffe denies having made this statement, Bello corroborates his version of the conversation with the deposition testimony of several Michie executives who spoke with Radcliffe shortly after the conversation took place.

Second, Bello points to a note that Radcliffe faxed to Laura Horn, Michie's Vice President of Sales and Marketing and Hintz's immediate supervisor, in which Radcliffe requested that she meet with him to discuss the candidacies of Bello and another applicant for the San Diego sales position. The note was handwritten on a sheet of paper that also contained a photocopy of a "Far Side" cartoon depicting one Neanderthal interviewing another. In

**11**

the cartoon, the interviewer finds fault with the interviewee's references, noting that they are all "baboons." Although Michie claims that the cartoon is innocuous, that Radcliffe saw fit to request a meeting to discuss a Nigerian-born African-American's application for employment on a sheet of paper containing this cartoon could potentially give rise to an inference of discriminatory animus. Indeed, several Michie executives stated in deposition testimony that they found the use of the cartoon in this context to be offensive and unprofessional. Further, notwithstanding defendant's assertion to the contrary, Bello sets forth sufficient evidence to permit a reasonable factfinder to conclude that Radcliffe was in a position to, and actually did, influence the decision to hire Lakos rather than Bello.

Consequently, I find that Bello has set forth sufficient evidence to permit a rational factfinder to conclude that race and/or national origin was the motivating factor behind Michie's decision to not offer him the San Diego sales position. See Hicks, 509 U.S. at 511. Therefore, summary judgment is inappropriate as to these claims. See Ayala-Gerena, 95 F.3d at 94-5.

### III. CONCLUSION

For the foregoing reasons, Michie's motion for summary judgment is granted with respect to Bello's Title VII sex discrimination and ADEA claims, and is denied with respect to his Title VII and Section 1981 race and national origin claims.

**12**

SO ORDERED.

_____
Paul Barbadoro
Chief Judge


January 6, 1998

cc:  Bruce Felmly, Esq.
     Julie Moore, Esq.