Boucher v. Edgcomb                        CV-94-185-JD  10/24/95
                    UNITED STATES DISTRICT COURT FOR THE
                          DISTRICT OF NEW HAMPSHIRE


Richard Boucher

      v.                                  Civil No. 94-185-JD

Edgcomb Metals Co., et al.


                              O R D E R


     The plaintiff Richard Boucher brings this action under the

Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 601 et

seq., and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201

et seq., to recover losses related to his June 1992 demotion and

March 1993 termination by his former employer, defendant Edgcomb

Metals Company Home.  Before the court is the defendant's motion

for summary judgment on both claims (document no. 42).


                            Background[1]

     The defendant processes and distributes metal products from

several locations around the country, including a facility

located in Nashua, New Hampshire.  The plaintiff was hired by the

defendant in 1963 and remained in its employ until his March 12,

1993, termination.  Beginning in 1979, the plaintiff held a

_____

     [1]The court's recitation of the facts relevant to the instant
motion are either not in dispute or have been alleged by the
plaintiff.

variety of positions related to the shipping of the defendant's products.  The plaintiff served as traffic manager from 1989 until he was replaced by a less qualified, thirty-two year-old employee in June 1992.  The plaintiff, who was then age fifty-three, was terminated the following year.  The court incorporates other facts, infra, as necessary for its analysis of the legal issues presented by the instant motion.

## Discussion

The role of summary judgment is "to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required."  Snow v. Harnischfeger Corp., 12 F.3d 1154, 1157 (1st Cir. 1993), cert. denied, 115 S. Ct. 56 (1994) (quoting Wynne v. Tufts Univ. Sch. of Medicine, 976 F.2d 791, 794 (1st Cir. 1992), cert. denied, 113 S. Ct. 1845 (1993)).  The court may only grant a motion for summary judgment where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

The party seeking summary judgment bears the initial burden of establishing the lack of a genuine issue of material fact.

2

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Quintero de Quintero v. Aponte-Roque, 974 F.2d 226, 227-28 (1st Cir. 1992). The court must view the entire record in the light most favorable to the non-moving party, "`indulging all reasonable inferences in that party's favor.'" Mesnick v. General Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (quoting Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990), cert. denied, 112 S. Ct. 2965 (1992)). However, once the moving party has submitted a properly supported motion for summary judgment, the non-moving party "may not rest upon mere allegation or denials of [its] pleading, but must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986) (citing Fed. R. Civ. P. 56(e)). Finally, even in employment discrimination cases, "where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." Smith v. Stratus Computer, 40 F.3d 11, 13 (1st Cir. 1994) (gender discrimination) (quoting Goldman v. First Nat'l Bank of Boston, 985 F.2d 1113, 1116 (1st. Cir. 1993)), cert. denied, 115 S. Ct. 1958 (1995).

## COUNT ONE: AGE DISCRIMINATION CLAIM

The parties agree that this case is governed by the burden-shifting praxis announced in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See, e.g., Woodman v. Haemonetics Corp., 51 F.3d 1087, 1091 (1st Cir. 1995) (applying McDonnell Douglas to ADEA) (citing cases). The court will address each stage of the analysis seriatim.

## I.   Stage One: The Plaintiff's Prima Facie Case

At stage one, the plaintiff is required to make a prima facie showing that he (1) was at least forty years old; (2) met his employer's legitimate performance expectations; (3) experienced adverse employment action; and (4) the defendant did not treat age neutrally or retained a younger person in the plaintiff's position. E.g., Woodman, 51 F.3d at 1091 (citing LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 842 (1st Cir. 1993), cert. denied, 114 S. Ct. 1398 (1994); Goldman, 985 F.2d at 1117)). The stage one prima facie showing "is not especially burdensome," id. (citing Greenberg v. Union Camp Co., 48 F.3d 22, 27 (1st Cir. 1995)), and once established creates a rebuttable presumption that the defendant engaged in unlawful age discrimination. E.g., id. (citing Goldman, 985 F.2d at 1117).

4

The defendant concedes that the plaintiff has satisfied the first and third elements of his prima facie case. However, the defendant argues that it is entitled to summary judgment because the plaintiff has not and cannot satisfy the second and fourth elements. The plaintiff responds that the existence of a genuine dispute of material fact on each of the two disputed elements precludes entry of summary judgment at this stage.

Edgcomb asserts that the plaintiff has not satisfied the second element because his job performance and qualifications, although acceptable prior to his demotion and termination, were no longer adequate for the revised traffic manager position, particularly in light of Edgcomb's deteriorating financial condition and sharp reductions in force. See Defendant's Memorandum of Law in Support of Summary Judgment at 20, 27 (plaintiff's evaluations indicate that his performance levels decreased as job responsibilities increased), 28 (Edgcomb "needed someone who could lead the department through difficult times and handle increasing levels of responsibility").

The plaintiff has adduced evidence, much of it disputed or termed irrelevant by the defendant, to establish that he did meet Edgcomb's legitimate performance expectations. See, e.g., Plaintiff's Memorandum in Opposition to Summary Judgment at 12-16. For example, the plaintiff was named employee of the month

5

in July 1989; received performance ratings and written comments showing levels at or above "good/competent" in 1989 and 1991; and in 1991 was selected as unit manager for "Project JumpStart," a company-wide initiative designed to reduce costs and increase efficiency. Id., exhibits 11, 15; Deposition of Peter Ward, vol. I at 104-106. Moreover, in the April 5, 1992, Boston Globe, Edgcomb advertised the traffic manager job as requiring, inter alia, "a minimum of 3 years supervisory experience in trucking . . . which includes direct responsibility for D.O.T. and drivers." Id., exhibit 20. The plaintiff satisfied these and other job requirements articulated by Edgcomb, id. at 16, and, according to Ray Fisher, an Edgcomb plant operations manager, the plaintiff was more qualified for the position than the individual hired as his replacement. Id. at 17 (citing Deposition of Richard Boucher, vol. I at 145-46). In addition, the plaintiff has submitted statistical evidence indicating that his department's monthly on-time delivery performance figures were at least ten percent higher in each of the four months immediately preceding his demotion than they were in the three months that followed. Id. at 22 (citing exhibit 14). Likewise, as traffic manager the plaintiff reduced annual driver overtime charges from $113,794 in 1989, to $15,487 in 1992. Id. at 22 (citing Ward Deposition, vol. II at 206-07; exhibit 21). Given this and other

evidence, the court finds that the plaintiff has satisfied the second prima facie element.

Edgcomb next asserts that the plaintiff has not satisfied the fourth element of the prima facie case because the plaintiff technically was not replaced by a younger individual. See Defendant's Memorandum in Support of Summary Judgment at 29 ("Rallis [the younger worker] was not hired to replace plaintiff in the sense that defendant was not going to terminate plaintiff to make room for Rallis."). Rather, Edgcomb asserts that it hired the younger worker to fill a newly-created traffic manager position in which the younger worker would supervise the plaintiff and perform other tasks previously delegated to other employees. See id. at 29-31.

Again the plaintiff has adduced evidence to establish that Edgcomb did, in fact, retain a younger worker in the same position. First, the plaintiff has submitted the "new hire" form completed by the defendant at the time Rallis was hired. The form states that Rallis was hired as the "Replacement for Richard Boucher who is to be reassigned at another position." Plaintiff's Memorandum in Opposition to Summary Judgment, exhibit 9. The new hire form also identifies Rallis' position as "TRAFFIC MANAGER NASHUA" -- the same title frequently used to describe the plaintiff's position. See id., exhibit 9; see also

7

exhibits 1-4, 6 (affidavits of Edgcomb employees describing plaintiff as traffic manager). Second, Arnold Thibodeau, a former inside sales manager for the defendant, testified that in October, 1991, he was offered and rejected the plaintiff's position. See id., exhibit 1; Affidavit of Arnold Thibodeau at ¶¶ 10-13. Given this and other evidence, the court finds that the plaintiff has satisfied the fourth prima facie element. Accordingly, the plaintiff has established a rebuttable presumption of impermissible age discrimination.

## II. Stage Two: The Defendant's Legitimate Reason

At stage two, an employer may rebut the presumption of age discrimination by "articulat[ing] a legitimate nondiscriminatory reason for the employee's termination." LeBlanc, 6 F.3d at 842 (quoting Lawrence v. Northrop Corp., 980 F.2d 66, 69 (1st Cir. 1992)); see Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981); Woodman, 51 F.3d at 1092. The employer's burden at this stage is only one of production, as the plaintiff retains the burden of persuasion at all times. LeBlanc, 6 F.3d at 842 (citing Lawrence, 980 F.2d at 69; Mesnick, 950 F.2d at 823-24)). Once the employer has proffered a legitimate nondiscriminatory justification for its actions, the plaintiff's prima facie case and attendant presumption of discrimination evaporates. E.g.,

8

Woodman, 51 F.3d at 1092 (citing St. Mary's Honor Ctr. v. Hicks, 113 S. Ct. 2742, 2749 (1992)); LeBlanc, 6 F.3d at 842.

Edgcomb has stated with particularity its reasons for first demoting and later terminating the plaintiff. Edgcomb explains that it demoted the plaintiff because his skills, although appropriate for his position prior to the fall of 1991, were no longer suitable for the broader responsibilities contemplated for the Nashua traffic manager position following the consolidation of Edgcomb's New Hampshire operations. See, e.g., Defendant's Memorandum in Support of Summary Judgment at 22 ("the whole focus and direction of distribution was going to change . . . the company needed someone to prioritize, plan, and handle confrontation") (citing Deposition of Paul Koza, vol. I at 60-61), 23-24 (plaintiff not capable of being strong leader) (citing Deposition of Peter Ward, vol. I at 124-25), 24 (plaintiff was poor delegator, could not properly prioritize workload, and could not say no to requests made by other departments) (citing Koza Deposition, vol. I. at 16, 50-51).

Edgcomb justifies its termination of the plaintiff as part of an overall reduction in force in which its total New England workforce was reduced from approximately 265 employees in 1989 to approximately 100 employees in 1993. See id. at 35, n.21 (citing Affidavit of Joseph Canastra at ¶ 8). At the time he was

9

terminated, the plaintiff was the "number two" manager in a department that Edgcomb management determined could be run by a single employee.  Id. at 36-37 ("in a reduction in force, a company needs to keep its best performers . . . a reasonable company will retain the department heads and release their subordinates").  The court finds that the defendant, having articulated a legitimate, nondiscriminatory reason for its conduct, has satisfied its burden of production at stage two of the McDonnell Douglas analysis.

III. Stage Three: Pretext and Discrimination

The burden of production shifts back to the plaintiff at stage three.  E.g., Byrd v. Ronayne, 61 F.3d 1026, 1031 (1st Cir. 1995); Stratus Computer, 40 F.3d at 16; Woods v. Friction Materials, Inc., 30 F.3d 255, 260 (1st Cir. 1994).  To avoid summary judgment, the plaintiff must introduce sufficient admissible evidence to support two additional findings: (1) that the employer's articulated reason for the job action was pretextual; and (2) that the true reason was discriminatory. E.g., Byrd, 61 F.3d at 1031; Stratus Computer, 40 F.3d at 16 (citing Woods, 30 F.3d at 260).  "The plaintiff may rely on the same evidence to prove both pretext and discrimination, but the evidence must be sufficient for a reasonable factfinder to infer

10

that the employer's decision was motivated by discriminatory animus." Stratus Computer, 40 F.3d at 16 (citing Goldman, 985 F.2d at 1117-18). Accordingly, at this stage the court must determine whether the plaintiff has raised a genuine dispute of material fact that the employer "did not rely on its articulated reasons in [demoting and terminating the plaintiff] and unlawfully discriminated against [the plaintiff] because of his age." Woods, 30 F.3d at 262 (emphasis in original).

### A. Pretext

In its motion Edgcomb asserts that the plaintiff's case is fatally flawed because he "has offered no evidence to dispute defendant's conclusion that he was not the strong leader and manager needed to run the transportation function." Defendant's Reply to Plaintiff's Opposition to Summary Judgment at 2. Rather, it dismisses the plaintiff's evidence of pretext as "completely deficient" and "based on arrant speculation and his self-perception of his ability to perform the duties of traffic manager." Defendant's Memorandum in Support of Summary Judgment at 40-43.

The plaintiff responds that summary judgment is foreclosed because discovery has revealed numerous disputes of fact concerning the material question of whether Edgcomb's articulated

11

reasons for his demotion and termination were pretextual. See Plaintiff's Memorandum in Opposition to Summary Judgment at 30-50; Plaintiff's Reply Memorandum at 19.

When determining whether the plaintiff has demonstrated that the employer's proffered reason is pretextual, the "court's focus must be on the perception of the decisionmaker, that is, whether the employer believed its stated reason to be credible." Mesnick, 950 F.2d at 824 (quoting Gray v. New England Tel. and Tel., 792 F.2d 251, 256 (1st Cir. 1986)). To meet this burden,

> it is not enough for a plaintiff merely to impugn the veracity of the employer's justification; he must elucidate specific facts which would enable a jury to find that the reason given is . . . a sham.

Id. (quoting Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 9 (1st Cir. 1990)). In general, the "most obvious and relevant piece of evidence [the plaintiff] could introduce to contradict [the employer's] assertion that he was not the best qualified for the position would be evidence regarding the qualifications of those hired." Id.

The court has identified at least two distinct areas of factual dispute which, depending on how the evidence is construed by the jury, would support a finding that Edgcomb did not believe its stated reason to be credible.

First, the plaintiff has adduced relevant evidence concerning the qualifications of Gregory Rallis, the younger

12

individual hired for the traffic manager position.  According to

a "position questionnaire" completed in October 1990, the

qualifications for the "Traffic Manager IV" position included "at

least four years experience in all aspects of the metal

industry."  Plaintiff's Memorandum in Opposition to Summary

Judgment, exhibit 12.[2]  Rallis' resume does not reference any

prior experience in the metal industry.  See id., exhibit 19.

Likewise, the advertisement printed in the Boston Globe states

that a "CDL [commercial driver's license], driving experience,

high school diploma and continuing education is a plus."  Id.,

exhibit 20.  The plaintiff's qualifications include both a

commercial driver's license and driving experience while Rallis'

qualifications do not.  See id., exhibit 19.  In addition, the

plaintiff has testified that Ray Fisher, an Edgcomb manager, told

him "something to the effect that [Rallis] doesn't know his ass

from his elbow."  Boucher Deposition, vol. IV at 94-96.  A

---

[2]The plaintiff claims that the questionnaire was completed
jointly by himself and Paul Koza, his former supervisor.  See
Plaintiff's Memorandum in Opposition to Summary Judgment at 46,
exhibit 12.  Edgcomb maintains that the questionnaire was
completed solely by the plaintiff and, as such, does not identify
which skills management considered the job to require.  See
Defendant's Response to Plaintiff's Opposition to Summary
Judgment at n.18 (citing plaintiff's deposition).  The court
notes that, absent an unambiguous factual record, a dispute
concerning what qualifications were required for the position in
question and, in turn, who made such a determination, is itself
material to the plaintiff's ADEA claim.

13

reasonable jury could conclude that such a remark, particularly when made by a management-level individual with knowledge of the defendant's business, the plaintiff, and the younger replacement, is probative of the replacement employee's qualifications for the position.[3]

Second, the plaintiff has submitted the affidavit of Arnold Thibodeau. Thibodeau testified that following the elimination of his job as inside sales manager in 1991, Peter Ward and Joe Canastra offered him the position of traffic manager, then held by the plaintiff. Affidavit of Arnold Thibodeau at ¶ 10. Thibodeau further testified that

> [t]he idea of me doing the Traffic Manager's job was ridiculous, because I had no knowledge or experience in transportation. I knew virtually nothing about scheduling the Edgcomb deliveries, about common carriers, or about Department of Transportation regulations.

Id. at ¶ 12. A reasonable jury could conclude that, by offering the plaintiff's position to an individual who believed himself to be unqualified, Edgcomb management replaced the plaintiff for

---

[3]The defendant dismisses Fisher's statement, and much of the plaintiff's evidence, as "immaterial" or irrelevant because it does not address the state of mind or conduct of the two people who purportedly were the only "decision-makers at issue in this case." Defendant's Reply to Plaintiff's Opposition to Summary Judgment at 3, n.9. The court notes that Fisher's remark, as retold by the plaintiff, is probative of whether the replacement was more qualified than the plaintiff and, thus, whether the defendant's justification was pretextual.

14

reasons other than those proffered, <u>i.e.</u>, to find a more qualified, stronger manager for the transportation department. Edgcomb responds that its offer to Thibodeau is entirely consistent with its legitimate, nondiscriminatory reason for the employment actions. <u>See</u> Defendant's Response to Plaintiff's Opposition to Summary Judgment at 13-14. The very fact that each party has co-opted the Thibodeau job offer in support of its respective position underscores the existence of a material dispute of fact over whether the plaintiff was qualified for the position and, thus, whether Edgcomb's articulated reasons were pretextual.

The court finds that there is a genuine dispute of material fact about whether Edgcomb believed its stated reason or instead used the stated reason as a pretext for its true motivation.

B.    Discriminatory Animus

Edgcomb next asserts that "the record is completely devoid of any evidence which could support a reasonable inference of age animus." Defendant's Memorandum in Support of Summary Judgment at 47. Edgcomb argues that

> [i]n essence, plaintiff's argument amounts to "age
> discrimination by default." In other words, because
> plaintiff cannot think of any other reason why he would
> have been let go, he assumes that it must have been
> based on his age. His assumptions, however, are not
> only wrong, they are wholly inadequate to avoid a
> summary judgment.

15

Id. at 43-44.

The plaintiff responds that he has submitted evidence of age animus and, in addition, that the jury is entitled to infer discriminatory intent where there is evidence of pretext and a suspicion of mendacity. Plaintiff's Memorandum in Opposition to Summary Judgment at 25-28 (citing Hicks, 113 S. Ct. 2742); Plaintiff's Reply Memorandum at 18-22.

To defeat a motion for summary judgment the plaintiff must marshal sufficient evidence for the jury to find or infer that the employment action was motivated by age animus. E.g., Woodman, 51 F.3d at 1092; Woods, 30 F.3d at 260. The plaintiff may "rely on the same evidence to prove both pretext and discrimination," Stratus Computer, 40 F.3d at 16, and, as always, the evidence may be direct or circumstantial, Woods, 30 F.3d at 260. The Supreme Court has indicated that a jury deciding an employment discrimination claim may infer discriminatory animus:

> The factfinder's disbelief of the reasons put forward
> by the defendant (particularly if disbelief is
> accompanied by a suspicion of mendacity) may, together
> with the elements of the prima facie case, suffice to
> show intentional discrimination. Thus, rejection of
> the defendant's proffered reasons, will permit the
> trier of fact to infer the ultimate fact of intentional
> discrimination . . . .

Hicks, 113 S. Ct. at 2749. The First Circuit has interpreted the Hicks decision

16

> as making clear that the Supreme Court envisioned that some cases exist where a prima facie case and the disbelief of a pretext could provide a strong enough inference of actual discrimination to permit the fact-finder to find for the plaintiff. Conversely, we do not think that the Supreme Court meant to say that such a finding would always be permissible. The strength of the prima facie case and the significance of the disbelieved pretext will vary from case to case depending on the circumstances. In short, everything depends on the individual facts.

Stratus Computer, 40 F.3d at 16 (quoting Woods, 30 F.3d at 261 n.3)); see Barbour v. Dynamics Research Corp., ___ F.3d, ___, ____, No. 94-2283, 1995 WL 472043 * 6 (1st Cir. Aug. 15, 1995); Byrd, 61 F.3d at 1031; Woodman, 51 F.3d at 1092. Although recent decisions of the First Circuit reveal that there can be no precise formula for use in determining whether an inference of discriminatory animus is reasonable on the facts of a given case, a "truly bare bones prima facie case" of age discrimination is unlikely to support such an inference. Woods, 30 F.3d at 261 n.3.[4] Finally, even given the inferences permissible under

---

[4]The First Circuit has provided the following example of a case in which the plaintiff's prima facie case and the disbelief of pretext would not provide "a strong enough inference of actual discrimination to permit the fact-finder to find for the plaintiff":

> [S]uppose an employee made out a truly bare-bones prima facie case of age discrimination, and the employer responded that the employee lacked the necessary skills for the job. Suppose also that the unrefuted evidence showed that the response was a pretext, because the employer had fired the employee to conceal the employer's own acts of embezzlement. In such an

17

<u>Hicks</u>, a plaintiff "cannot avert summary judgment if the record is devoid of adequate direct or circumstantial evidence of discriminatory animus on the part of the employer." <u>Id.</u> (quoting <u>LeBlanc</u>, 6 F.3d at 843).

The court next determines whether the plaintiff has adduced sufficient evidence to convince a reasonable jury that the defendant's articulated reason was not only a pretext, but was a pretext for unlawful age discrimination. The court first considers the direct evidence submitted on this point and, if necessary, will proceed to review the evidence that the plaintiff argues supports an inference of age discrimination under <u>Hicks</u>.

The plaintiff has submitted evidence which he claims is directly probative of age animus. <u>See</u> Plaintiff's Memorandum in Opposition to Summary Judgment at 54-55. First, the plaintiff asserts that "Edgcomb did not apply its criteria for success as a Traffic Manager [the on-time delivery statistics] in an age neutral fashion." <u>Id.</u> at 54. Contrary to the plaintiff's assertion, the court finds that the fact that the on-time delivery rate was higher under his supervision of the traffic

---

instance, there would be a prima facie case at the outset and a disbelieved pretext, but we think it plain that no reasonable jury could find age discrimination on such a record.

<u>Woods</u>, 30 F.3d at 261, n.3.

18

department than under his replacement's supervision does not constitute direct evidence of a discriminatory animus. Even assuming the disputed fact that the on-time delivery rate was an important performance criteria, evidence that Edgcomb disregarded its own criteria only is probative of whether Edgcomb actually demoted and terminated the plaintiff for the reasons stated. That is, evidence of pretext does not, absent more, also constitute evidence of pretext as a sham for age discrimination.

The plaintiff also asserts that the defendant's discriminatory animus is evidenced by its offer of the plaintiff's job to Thibodeau, the laid-off employee who did not consider himself to be qualified. Plaintiff's Memorandum in Opposition to Summary Judgment at 54-55; Plaintiff's Reply Memorandum at 5-8. Again the argument fails because the evidence, although probative of pretext, in no way suggests that the true motivation behind the pretext was unlawful age discrimination. Indeed, the fact that the defendant may have offered the position to a man who at age forty-six was approximately five years younger than the plaintiff indicates that age did not motivate the demotion and termination decisions. See generally Maxfield v. Sinclair Int'l, 766 F.2d 788, 793 (3d Cir. 1985) ("If the differences in ages of the two employees were insignificant, the district court would likely find that the

evidence was insufficient to permit an inference of discrimination."), cert. denied, 474 U.S. 1057 (1986).

The court concludes that the plaintiff has failed to identify evidence which, on its own, would allow a jury to conclude that the motivation behind the pretext was age discrimination. However, under Hicks and its progeny a jury presented with a strong prima facie case of age discrimination, particularly when coupled with solid evidence of pretext and a suspicion of mendacity, may infer discriminatory animus without any direct or circumstantial evidence on this element. The court must determine whether this case would support such an inference.

The plaintiff has stated a prima facie claim of age discrimination at stage one of the McDonnell Douglas analysis. For purposes of its analysis under Hicks, the court finds that the plaintiff has made out more than a "truly bare-bones prima facie case of age discrimination." Woods, 30 F.3d at 261, n.3. However, the court, mindful that the stage one showing "is not especially burdensome," Woodman, 51 F.3d at 1091, notes that the evidence presented does not constitute a particularly strong prima facie case either. Specifically, the second element of the plaintiff's claim, that he met his employer's legitimate performance expectations, is based in large part on evidence of the plaintiff's past acceptable performance and on favorable

20

testimony concerning his qualifications elicited from individuals not in decision-making positions at Edgcomb, such as former subordinates and members of management not responsible for the transportation department. Although the evidence certainly does highlight a genuine dispute over his qualifications, the proof is far less convincing in view of the defendant's explanation that the traffic manager position had been revised and expanded in response to Edgcomb's well-documented financial difficulties and dramatic reduction in force. See Menard v. First Sec. Servs. Corp., 848 F.2d 281, 286 (1st Cir. 1988) (where business conditions had changed, prior performance evaluations "not directly relevant to the issue of whether he was qualified at the time of discharge"). In sum, the court finds that the plaintiff's prima facie case, although not bare bones, is vulnerable because at least one element of the claim is supported by evidence of questionable relevance.[5]

The court also has found, supra, that the plaintiff has marshalled evidence which, when taken in a favorable light and credited all reasonable inferences in the spirit of Rule 56,

_____

[5]Likewise, the evidence supporting the fourth element of the plaintiff's prima facie case, i.e., that the defendant retained a younger worker in the same position, is undermined by Edgcomb's evidence that it hired Rallis for a newly-created position which included some of the tasks previously performed by the plaintiff and some responsibilities previously delegated to the plaintiff's supervisors.

21

could support a jury finding of pretext at stage three of the analysis. The court need not elaborate on the finding for purposes of its analysis under Hicks.

The plaintiff argues that the record supports a suspicion of mendacity, that is, a belief that the defendant's conduct is "characterized by deception or falsehood which often is not intended to genuinely mislead or delude." Webster's Ninth New Collegiate Dictionary 741 (1990). The plaintiff claims that the existence of disputes of material fact concerning, inter alia, the veracity of Edgcomb's rationale for terminating him; Edgcomb's criticism of his past job performance; and Edgcomb's assertions that Rallis was more qualified for the position; manifest "stark conflicts on basic issues of fact between Edgcomb and independent witnesses [which] raise the suspicion of Edgcomb's mendacity." Plaintiff's Memorandum in Opposition to Summary Judgment at 54; see Plaintiff's Reply Brief at 14.

The plaintiff correctly observes that the defendant disputes many if not most of the factual assertions material to the instant lawsuit. For example, the court finds it somewhat unusual that Edgcomb's senior management is unable to articulate clearly what the plaintiff's job title was and what his responsibilities included. Paul Koza, the defendant's manager of plant operations, testified that prior to June 1992,

22

> We didn't have traffic managers. We had dispatchers.
> We had a traffic manager from June of 1992 to date.
> Prior to that, they were referred to as dispatchers.
> We did not have a person that was labeled and did the
> job of a traffic manager. They may have had the title
> of traffic manager, and I explained how that happened,
> but they were dispatchers. They were not traffic
> managers.

Koza Deposition, vol. I at 83-84. Peter Ward, the defendant's director of transportation, recalled that, prior to 1992, the plaintiff was responsible for some but not all traffic manager functions and "had the title of traffic manager." Ward Deposition, vol. I at 87. The testimony of Koza and Ward stands in contrast to the fact that, in 1989, the plaintiff was named employee of the month for his performance as "traffic manager," and the fact that, in 1990, the plaintiff and Koza jointly signed a position questionnaire in which the plaintiff's responsibilities as "Traffic Manager IV" were described. See Plaintiff's Memorandum in Opposition to Summary Judgment, exhibits 12, 15. The court agrees that a jury reasonably could view the manner with which Edgcomb disputes certain basic facts, such as those concerning the plaintiff's former job title and description, as evidence of a lack of candor or, perhaps, a mendacious approach to the instant employment dispute.

The court finds that the plaintiff has presented an adequate prima facie case of age discrimination along with evidence of pretext and a suspicion of mendacity -- the necessary

23

cornerstones of an inference of discriminatory animus under Hicks. However, such a showing does not ipso facto defeat a motion for summary judgment because Hicks, fairly read and as interpreted by the First Circuit, does not diminish the requirement that any inference of discriminatory animus must be reasonable in order to proceed to trial. See, e.g., Woods, 30 F.3d at 260. Indeed, although the First Circuit recognizes that there exist some cases in which a jury could infer intentional discrimination from the prima facie showing and evidence of pretext, recent decisions confirm that Hicks does not contemplate such an inference absent a particularly strong evidentiary record or some thread of evidence probative of a discriminatory animus. See Barbour, 1995 WL 472043 at * 9-10 (affirming entry of summary judgment where plaintiff "failed to present evidence that would enable a reasonable jury to conclude that [employer's] actions were motivated by a desire to interfere" with plaintiff's rights under ERISA); Byrd, 61 F.3d at 1033 (affirming entry of summary judgment where plaintiff presented "no competent evidence from which a rational factfinder reasonably could infer that [employer's] explanation for its adverse employment action was a pretext for employment discrimination" on the basis of gender); Stratus Computer, 40 F.3d at 18 (summary judgment affirmed where court found "nothing in [plaintiff's] evidence that would permit

a reasonable jury to infer that discriminatory animus motivated [employer] to remove [plaintiff] from her job" on the basis of gender); Woods, 30 F.3d at 262 (summary judgment affirmed where plaintiff "failed to present sufficient evidence to permit a reasonable factfinder to infer that [employer's] articulated reason was a pretext for unlawful age discrimination"); cf. Woodman, 51 F.3d at 1090, 1094-95 (summary judgment vacated because jury reasonably could find or infer age discrimination given supervisor's testimony that employer "want[s] younger people here.  They will be the one[s] that will be successful here.").[6]

---

[6]The plaintiff also asserts that a "suspicion of mendacity is enough to preclude summary judgment," and that "in order for a plaintiff to avoid summary judgment, he need only show that the non discriminatory reasons presented by the defendant are pretextual."  Plaintiff's Reply Memorandum at 14, 19.  The plaintiff argues that either the evidence of Edgcomb's evolving and sometimes contradictory explanation for its conduct or the evidence concerning the employment offer to Thibodeau preclude entry of summary judgment.  See id.

The plaintiff correctly notes that the Third Circuit recently adopted the "pretext-only" interpretation of Hicks by ruling that

> if the plaintiff has pointed to evidence sufficient to discredit the defendant's proffered reasons, to survive summary judgment the plaintiff need not also come forward with additional evidence of discrimination beyond his or her prima facie case.

Waldron v. SL Industries, 56 F.3d 491, 495 (3d Cir. 1995) (quoting Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994)); see Anderson v. Baxter Healthcare Corp., 13 F.3d 1120, 1125 (7th

25

Based on its application of <u>Hicks</u> and interpretive decisions of the First Circuit, the court finds that the record before it cannot support a reasonable inference that the stated reason for the plaintiff's demotion and termination was a pretext for unlawful age discrimination. The evidence, even accorded an indulgent gloss under Rule 56, contains nothing to indicate that Edgcomb's conduct was either motivated by a discriminatory animus or was accompanied by the slightest consciousness of the plaintiff's age. At most the evidence supports an inference that

Cir. 1994) ("If the only reason an employer offers for firing an employee is a lie, the inference that the real reason was a forbidden one, such as age, may rationally be drawn." (quotation omitted)). Thus, in at least some circuits ADEA plaintiffs are permitted to support an inference of intentional discrimination, and thus defeat a Rule 56 motion, merely by presenting a <u>prima facie</u> case along with competent evidence to discredit the defendant's stated reasons for its conduct. Having made this showing, the case proceeds to trial without any consideration of whether a reasonable jury actually could draw such an inference from the content and contours of the <u>prima facie</u> case and the evidence of pretext.

In contrast, the First Circuit continues to require plaintiffs seeking to infer discriminatory intent under <u>Hicks</u> to adduce sufficient evidence that would allow a reasonable jury to infer such animus. It is often not enough to present a <u>prima facie</u> case along with evidence of pretext and mendacity because, in this circuit, the courts <u>further</u> examine the substance of the evidence submitted to determine whether it contains facts which, taken a light most favorable to the plaintiff, would allow a reasonable jury to infer discriminatory animus. <u>E.g.</u>, <u>Woods</u>, 30 F.3d at 260. Given the existence of recent, relevant, and controlling decisions of the First Circuit, <u>see</u> <u>supra</u>, p. 23-26, the court declines to apply the more lenient, less case-specific standard, employed in other circuits.

Edgcomb management disbelieved the articulated rationale and, instead, demoted and terminated the plaintiff for some other reason it did not want to state publicly, such as personal animosity or callous insensitivity to his dedicated service. The plaintiff cannot evade summary judgment by presenting a genuine factual dispute over whether his employer's true motives were, in a generalized way, unscrupulous or even immoral because "ADEA does not stop a company from discharging an employee for any reason (fair or unfair) or for no reason, so long as the decision to fire does not stem from the person's age." Mesnick, 950 F.2d at 825 (quoting Freeman v. Package Machinery, 865 F.2d 1331, 1341 (1st Cir. 1988)).

The unreasonableness of an inference of age discrimination is underscored by the plaintiff's own testimony, which is properly considered as either a deposition or as an admission on file under Rule 56(c). During his deposition the plaintiff repeatedly stated that he was demoted and terminated because of his age but, when pressed, conceded that this conclusion was based on his subjective view of his job performance and qualifications. Moreover, on at least three occasions the plaintiff testified that his allegations of age discrimination arose from the perceived absence of what he would consider to be

27

a logical explanation for Edgcomb's conduct.  The following

excerpt typifies this reasoning:

> My performance was fine.  I didn't know of anything or nobody had told me, no one had told me anything about my not doing a good job in being able to handle the traffic department.  I had no reason to believe, other than my age, that they would let me go.

Boucher Deposition, vol. IV at 122.[7]  By testifying that he

_____

[7]The following testimony supports Edgcomb's theory that the plaintiff grounds his allegations of discrimination on the absence of a better explanation:

> Q:   Now prior to the time [Gregory] Rallis came on board, did you believe that the hiring of Rallis was unnecessary?
>
> A:   Yes.
>
> Q:   And do I gather that is because you felt that it was your job and you should have had it?
>
> A:   I felt at the time that I was doing an excellent job for the company and that I was qualified to do the job and I couldn't see any reason other than my age, as to why they would bring [Rallis] on and let me go.  It didn't make any sense.
>
> Q:   Anything else other than your subjective opinion?
>
> A:   No.

                    *  *  *  *

> A:   I don't know of any reason why Mr. Ward, any other reason why Mr. Ward would have let me go other than my age because I felt that I was doing a professional job as the traffic manager at Edgcomb in Nashua.
>
> Q:   Anything else?
>
> A:   No.

"can't think of any reason other than [his] age," id., at 123, the plaintiff has tacitly acknowledged that even his personal inference of intentional age discrimination rests not on specific facts or evidence but on "conclusory allegations" and "unsupported speculation" -- a plainly improper basis upon which to defeat summary judgment. E.g., Stratus Computer, 40 F.3d at 13 (quoting Goldman, 985 F.2d at 1116); Connell v. Bank of Boston, 924 F.2d 1169, 1175 (1st Cir.), cert. denied, 501 U.S. 1218 (1991). See generally Anderson v. Liberty Lobby, 477 U.S.

---

> Q: Let me be sure I understand. Other than your subjective belief that you were doing a good job or a professional job or whatever words you subjectively believed, is there any other reason that you can share with us that you would believe or contend that Mr. Ward either made a decision or participated in a decision to terminate you because of your age?
>
> A: Not that I can recall at this point.
>
> * * * *
>
> Q: [W]hat facts are you relying on to support your contention that Mr. Canastra either made the decision or participated in the decision to terminate you because of your age?
>
> A: Only the fact that I was doing a good job for the company, my on-time performance was fine, the expenses were going down. I didn't know of any problems that he had relating to my performance. I was handling my responsibilities in an effective manner. That is all I can think of at this point.

Boucher Deposition, vol. IV at 102-103, 115-17.

at 256 (mere allegations insufficient to survive motion for summary judgment) (citing Fed. R. Civ. P. 56(e)).

The prima facie case, evidence of pretext and the suspicion of mendacity, even viewed collectively in a light most favorable to the plaintiff, simply do not constitute "evidence sufficient for the factfinder reasonably to conclude that the employer's decision to [demote or] discharge . . . was wrongfully based on age." Woods, 30 F.3d at 260. The plaintiff, unable to satisfy a necessary element of his ADEA claim, cannot proceed to trial and the defendant is entitled to judgment as a matter of law on count I.


## COUNT TWO: FAIR LABOR STANDARDS ACT

The plaintiff also has alleged that Edgcomb violated the FLSA by failing to pay him overtime for hours worked in excess of forty per work week. See Amended Complaint at ¶ 34. Edgcomb asserts that there is no dispute of fact that the plaintiff's position is exempt from the overtime provisions of the act and, as a result, that it is entitled to summary judgment on this claim as well.

The FLSA requires that employees engaged in interstate commerce be compensated for each hour worked in excess of forty during a given work week at a rate not less than one and one-half

30

times the regular rate at which the employee is paid. 29 U.S.C.A. § 207(a)(1) (West Supp. 1995). However, the mandatory overtime provisions do not apply to "any employee employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C.A. § 213(a)(1). The employer bears the burden of establishing that the plaintiff is an exempt employee. Reich v. Newspapers of New England, 44 F.3d 1060, 1070 (1st Cir. 1995). In all cases "exemptions are to be narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit." Id. (quoting Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 392 (1960)).

The court's consideration of whether an employee falls within an exemption under § 213(a)(1) is controlled by a web of regulations promulgated by the Secretary of Labor. See id. (citing Chevron U.S.A. v. Natural Resources Defense Council, 467 U.S. 837, 843-44 (1984) (regulations given controlling weight unless arbitrary, capricious, or contrary to statute)). Under the regulations, a bona fide executive is

> an employee who is compensated on a salary basis at a rate of not less than $250 per week . . . and whose primary duty consists of the management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof, and includes the customary and regular

31

direction of the work of two or more other employees therein.

29 C.F.R. § 541.1 (f). According to the Secretary,

A determination of whether an employee has management as his primary duty must be based on all the facts of a particular case. The amount of time spent in the performance of the managerial duties is a useful guide in determining whether management is the primary duty . . . . Time alone . . . is not a sole test . . . . [Other] pertinent factors are relative importance of the managerial duties as compared with other types of duties, the frequency with which the employee exercises discretionary powers, [and] his relative freedom from supervision.

29 C.F.R. § 541.103; see Secretary of Labor v. Papa Gino's of America, Inc., 712 F. Supp. 1038, 1043 (1989) (quoting Donovan v. Burger King, 672 F.2d 221, 225 (1st Cir.1982)).

A bona fide administrator is an employee who is compensated not less than $250 per week and "whose primary duty consists of the performance of work described in paragraph (a) of this section, which includes work requiring the exercise of discretion and independent judgment." 29 C.F.R. § 541.2(e)(2). Paragraph (a) describes an employee

[w]hose primary duty consists of either:

(1) The performance of office or nonmanual work directly related to management policies or general business operations of his employer or his employer's customers, or

(2) The performance of functions in the administration of a school system, or educational establishment or institution . . .

32

<u>Id.</u> at § 541.2(a). For purposes of evaluating the applicability of the administrator exemption, the court applies the same definition of "primary duty" used in the context of the executive exemption. <u>Id.</u> at § 541.206(b).

In its motion for summary judgment Edgcomb asserts that the plaintiff is not entitled to overtime compensation because at all relevant times he was employed as either an executive or an administrator within the meaning of § 213(a)(1). Edgcomb argues that the "plaintiff's testimony as set forth in his answers to interrogatories confirms that he was an exempt employee." Defendant's Response to Plaintiff's Opposition to Summary Judgment at 16. In contrast, the plaintiff asserts that summary judgment is foreclosed because his "duties, as testified to by Edgcomb's witnesses, do not require the levels of discretion and independent judgment contemplated by the [Department of Labor] regulations." Plaintiff's Opposition to Summary Judgment at 60.

During its consideration of the age discrimination claim the court recognized a genuine dispute of fact concerning the plaintiff's job title and the scope of his responsibilities prior to and following demotion and, in turn, concluded that such a basic dispute arguably supported a suspicion of mendacity. Notwithstanding the existence of the dispute, the court was able to enter summary judgment on the ADEA claim because the plaintiff

33

was unable to adduce evidence beyond arrant speculation to support a finding or inference of discriminatory animus, a necessary element of his claim.

The Rule 56 motion on the FLSA claim is based on the same ambiguous factual record and, thus, presents the same genuine dispute of fact. This time, however, the factual dispute necessarily forecloses summary judgment because the regulations governing overtime exemption require a fact-intensive inquiry into the purpose, nature, and function of the plaintiff's position and his working relationship with superiors and subordinates. The inquiry is further complicated by the fact that the plaintiff's job title and responsibilities apparently changed in 1992 with his demotion, the hiring of Rallis, and the claimed reorganization of the traffic department. Accordingly, the motion for summary judgment is denied with respect to count II.

Conclusion

The defendant's motion for summary judgment (document no. 42) is granted with respect to the plaintiff's age discrimination claim. The defendant's motion for summary judgment is denied with respect to the plaintiff's Fair Labor Standards Act claim.

The court's ruling with respect to the ADEA claim moots the plaintiff's motion in limine to exclude evidence of events

occuring after the plaintiff's termination (document no. 55), the defendant's motion in limine to exclude evidence or argument that the hiring of Greg Rallis or the demotion of the plaintiff was discriminatory (document no. 57), and the defendant's motion in limine to exclude evidence or argument relating to the layoff of Charles Barry (document no. 58).

Jury selection will proceed as scheduled on November 21, 1995.

SO ORDERED.


_____
Joseph A. DiClerico, Jr.
Chief Judge

October 24, 1995

cc:   James W. Donchess, Esquire
      Thomas B.S. Quarles Jr., Esquire
      Allan M. Dabrow, Esquire