Jimmie E. WOODS, Plaintiff, Appellant,

v.

FRICTION MATERIALS, INC., Defendant, Appellee.

No. 93–2296.

United States Court of Appeals, First Circuit.

Heard April 5, 1994.

Decided July 29, 1994.

Frederick T. Golder, with whom Bernstein, Golder & Miller, P.A., Lynnfield, MA, was on brief, for appellant.

Samuel A. Marcosson, James R. Neely, Jr., Gwendolyn Young Reams, and Vincent J. Blackwood, Washington, DC, were on brief, for E.E.O.C., amicus curiae.

Dan T. Carter, with whom James Allan Smith, Smith, Currie & Hancock, Atlanta, GA, Richard W. Gleeson, and Gleeson & Corcoran, Boston, MA, were on brief, for appellee.

Before BREYER,[*] Chief Judge, BOUDIN and STAHL, Circuit Judges.

STAHL, Circuit Judge.

Plaintiff Jimmie E. Woods filed a complaint charging defendant Friction Materials Inc. ("FMI") with illegal race, age, and handicap discrimination in violation of state and federal law. Woods now appeals the district court grant of summary judgment in favor of FMI. We affirm.

*I.*

### FACTUAL FINDINGS AND PRIOR PROCEEDINGS

Woods, a 54 year-old, handicapped, African–American male, was employed between 1961 and 1986 by PT/BT, a small group of interrelated brake manufacturing companies in Lawrence, Massachusetts. During his tenure with PT/BT, Woods was promoted twice, to the position of foreman in 1968, and to the position of supervisor in 1970. In 1986, FMI, a wholly owned subsidiary of Echlin, Inc. ("Echlin") acquired the assets of PT/BT. Thereafter, Woods continued working at FMI as a production foreman without a break in service.

In February of 1987, Echlin, concerned about the financial condition of the newly formed FMI, fired FMI's president and manufacturing manager. Three days later, Echlin appointed Patrick Healey to the top managerial position at FMI, that of division manager. Under Healey's leadership, FMI began to retool and update its manufacturing processes.

As a result, Woods and the other three FMI production foremen in the block-making department (Richard Bond, a 45 year-old caucasian male, Paul Harris, a 65 year-old African–American male, and Peter Lane, an 50 year-old African–American male) experienced an increase in their duties and responsibilities. According to Woods, FMI began to expect more from its employees and the supervisor's position became more complicated than it had been when he worked at PT/BT. Deposition of J. Woods at 28. After the reorganization began, of the four supervisors in the block-making department, Bond was terminated for poor performance and Lane was demoted to a non-supervisory position. Woods initially fared well at FMI, as evidenced by a November 1987 written evaluation in which Superintendent Elvin Valentin gave Woods an overall rating of three on a scale of one to five. In 1988, however, Woods learned that Valentin's opinion of his work had diminished. In a ten to fifteen

[*] Chief Judge Stephen Breyer heard oral argument in this matter but did not participate in the drafting or the issuance of the panel's opinion.

The remaining two panelists therefore issue this opinion pursuant to 28 U.S.C. § 46(d).

minute review, Valentin told Woods that both he and manufacturing manager Ray Shaffer (Woods' direct supervisor) felt that Woods was not performing up to his capability, that he needed to improve his scheduling and interpersonal skills, and that he would not be receiving a raise. *Id.* at 47–49.

In October 1988, Woods was injured in a non-work related automobile accident. The resulting injuries forced Woods to take an extended medical leave of absence from FMI. By the end of February 1989, Woods had used all of his medical and vacation leave time and still was unable to return to work. Pursuant to FMI's policy of terminating all employees who are unable to work after the expiration of their leave time, notwithstanding the ongoing nature of the ailment, FMI terminated Woods. Woods does not challenge his termination.

By 1989, Woods was physically able to return to work. In late 1989, FMI began interviewing candidates for the position of production foreman for a new production line. Woods, along with approximately seventy-four others, applied for one of four available positions. Of the seventy-five applicants, personnel manager Arthur McKew decided to interview eight, including Woods. The eight applicants were interviewed by two of FMI's production superintendents, Warren Kappeler and Garnet Wilson [1], who evaluated the candidates on their manufacturing and production knowledge and comprehension, supervisory skills, and general demeanor. Both Kappeler and Wilson assessed Woods' supervisory skills and understanding of production processes as weak and felt that on balance these weaknesses outweighed Woods' years of experience. Both men recommended that Woods not be hired. McKew stated that he ultimately decided not to hire Woods based upon the interviews and Woods' previous performance evaluations. In his deposition, McKew conceded that although Woods could have filled one of the open positions, he was not hired because there were others who he found to be better qualified. The positions were thereafter filled by four younger, nonhandicapped, caucasian males. Woods concedes that he is unaware of the qualifications possessed by those ultimately hired.

On March 19, 1990, Woods filed a complaint with the Massachusetts Commission Against Discrimination ("MCAD"). On May 7, 1990, Woods commenced this action by filing a complaint in the Superior Court of Massachusetts for the County of Middlesex. In his complaint, Woods charged FMI with age discrimination in violation of the federal Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.,* and with age and/or race and/or color and/or handicap discrimination in violation of Mass.Gen.L. ch. 151B and Mass.Gen.L. ch. 93 §§ 102 and 103.

After removing the action to the federal district court in Massachusetts, FMI filed a motion for summary judgment on all claims, claiming that Woods had not made out a prima facie case of discrimination because he had not shown that he was qualified for the position sought, and, in the alternative, that FMI's decision not to hire Woods had been made for nondiscriminatory reasons, i.e., those hired were better qualified. Woods filed a motion in opposition. On October 1, 1993, the district court issued a written order in which it awarded summary judgment in FMI's favor, finding that although Woods had established a prima facie case, he had failed to allege sufficient facts to rebut FMI's articulated nondiscriminatory reasons under both ADEA and Mass.Gen.L. ch. 151B. The district court further held that Woods' claim under Mass.Gen.L. ch. 93 was preempted by Mass.Gen.L. ch. 151B. It is from this judgment that Woods now appeals.

---

1. Wilson replaced Valentin who, in July 1989, was arrested by the Massachusetts State Police and terminated from his employment for theft of FMI funds. McKew aff. at 2. This is only important because of Woods' allegation that Valentin made racist remarks to Woods while they worked together. Valentin, however, played no role in FMI's decision not to hire Woods since he was no longer employed by the company when the employment decisions were made. *See Medina–Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 10 (1st Cir.1990) ("The biases of one who neither makes nor influences the challenged personnel decision are not probative in an employment discrimination case.").

## II.

### *STANDARD OF REVIEW*

 We review grants of summary judgment *de novo*, and, like the district court, are obliged to review the facts in a light most favorable to the non-moving party, drawing all inferences in the non-moving party's favor. *LeBlanc v. Great Am. Ins. Co.*, 6 F.3d 836, 841 (1st Cir.1993), *cert. denied*, — U.S. ——, 114 S.Ct. 1398, 128 L.Ed.2d 72 (1994). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). " '[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.' " *Medina–Munoz*, 896 F.2d at 8 (emphasis in original) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–248, 106 S.Ct. 2505, 2509–2510, 91 L.Ed.2d 202 (1986) (citations omitted)). Moreover, summary judgment may be appropriate " '[e]ven in cases where elusive concepts such as motive or intent are at issue, . . . if the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation.' " *Goldman v. First Nat'l Bank of Boston*, 985 F.2d 1113, 1116 (1st Cir.1993) (quoting *Medina–Munoz*, 896 F.2d at 8). Finally, Fed.R.Civ.P. 56(c) "mandates the entry of summary judgment . . . upon motion against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

## III.

### *DISCUSSION*

On appeal, Woods claims, *inter alia*, that the district court misapplied the respective burdens of the parties under both federal and state law. More specifically, Woods argues that the district court erred in ruling that the burden shifting framework as limned in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 93 S.Ct. 1817, 1824–26, 36 L.Ed.2d 668 (1973) and expounded in *St. Mary's Honor Center v. Hicks*, — U.S. ——, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (1) may require plaintiff to present more than a prima facie case in order to survive a motion for summary judgment, (2) requires the employer to do no more than simply articulate a nondiscriminatory reason for its employment action, and (3) requires plaintiff to present evidence to show not only that the employer's proffered reason was a pretext, but that it was a pretext *for* illegal discrimination. Moreover, Woods claims that the district court erred in analyzing both the federal and state claims together under the same federal standard and further erred in finding that Woods claims under Mass. Gen.L. 93 §§ 102 and 103 were preempted. We address each argument in turn.

### A. *Federal Claim*

 In an ADEA failure to hire discrimination suit, plaintiff bears the ultimate burden of persuading the factfinder that the employer illegally discriminated against plaintiff by refusing to hire plaintiff on the basis of his/her age. *See Lawrence v. Northrop Corp.*, 980 F.2d 66, 69 (1st Cir.1992). Where there is little direct evidence of age discrimination, plaintiff may rely upon the three stage burden-shifting framework set forth in *McDonnell Douglas*. *See id.* at 68; *Goldman*, 985 F.2d at 1117. Under this framework, plaintiff initially must establish a prima facie case of discrimination, i.e., in a failure to hire situation, plaintiff must show that (1) s/he is a member of a protected class, (2) s/he applied and was qualified for the position in question, (3) that despite his/her qualifications, s/he was rejected, and (4) that, after rejection, the position remained open and the employer continued to seek applicants from persons of the complainant's qualifications. *See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. Once plaintiff successfully establishes a prima facie case, it is presumed that the employer engaged in impermissible age discrimination. *See Texas*

*Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981).

■ In the second stage, the employer must rebut this presumption by articulating a legitimate, non-discriminatory reason for its decision not to hire plaintiff. *See Vega v. Kodak Caribbean, Ltd.,* 3 F.3d 476, 479 (1st Cir.1993). "The employer's burden at this stage is merely one of production; the burden of persuasion remains plaintiff's at all times." *Lawrence,* 980 F.2d at 69. Once a legitimate nondiscriminatory reason is articulated, the presumption created by plaintiff's prima facie case disappears. *Id.* At the third and final stage, plaintiff must produce sufficient evidence, direct or indirect, to show that the reasons advanced by the employer constitute a mere pretext for unlawful discrimination. *See LeBlanc,* 6 F.3d at 842. To meet this burden, the claimant must prove *both* that the employer's articulated reason is false, and that discrimination was the actual reason for its employment action. *See Hicks,* —— U.S. at —— n. 4, 113 S.Ct. at 2749 n. 4.[2] If plaintiff "fails to show 'pretext,' [for discrimination] the challenged employment action 'must stand.'" *Id.* —— U.S. at —— n. 6, 113 S.Ct. at 2752 n. 6 (quoting *McDonnell Douglas,* 411 U.S. at 807, 93 S.Ct. at 1826).

■ Of course, the framework described above applies to a full bench trial, as was the case in *Hicks.* As we noted in *LeBlanc,* however, the *Hicks* decision set forth the respective burdens which need to be met in

order for a party to survive a motion for summary judgment:

In the context of a summary judgment proceeding, *Hicks* requires that, once the employer has advanced a legitimate, non-discriminatory basis for its adverse employment decision, the plaintiff, before becoming entitled to bring the case before the trier of fact, must show evidence sufficient for the factfinder reasonably to conclude that the employer's decision to discharge him or her was wrongfully based on age. *Goldman,* 985 F.2d at 1117; *Lawrence,* 980 F.2d at 69–70; *Villanueva* [v. *Wellesley College* ], 930 F.2d [124,] 127–28 [ (1st Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 181, 116 L.Ed.2d 143 (1991) ]; *Connell* [v. *Bank of Boston* ], 924 F.2d [1169,] 1172 [ (1st Cir.), *cert. denied,* 501 U.S. 1218, 111 S.Ct. 2828, 115 L.Ed.2d 997 (1991) ]. "Direct or indirect evidence of discriminatory motive may do, but 'the evidence as a whole . . . must be sufficient for a reasonable factfinder to infer that the employer's decision was motivated by age animus.'" *Goldman,* 985 F.2d at 1117 (quoting *Connell,* 924 F.2d 1172 n. 3). Thus, the plaintiff cannot avert summary judgment if the record is devoid of adequate direct or circumstantial evidence of discriminatory animus on the part of the employer. *See id.* at 1118 (citations and footnote omitted).

*LeBlanc,* 6 F.3d at 843.[3]

### 1. Stage One—Woods' Prima Facie Case

■ We agree that Woods has provided sufficient evidence to establish a prima facie

---

**2.** Woods misstates the law when he argues without citing any authority that "[i]f the plaintiff shows that an employer's reasons are not credible, he resurrects the presumption of unlawful discrimination, since in the absence of any known reasons for the employers decision, courts presume that the employer was motivated by discriminatory reasons." In *Hicks,* the Court addressed this precise issue and held that once the defendant

has succeeded in carrying its burden of production, the *McDonnell Douglas* framework—with its presumptions and burdens—is no longer relevant. To resurrect it later, after the trier of fact has determined that what was 'produced' to meet the burden of production is not credible, flies in the face of our holding in

*Burdine* that to rebut the presumption '[t]he defendant need not persuade the court that it was actually motivated by the proffered reasons.'

*Hicks,* —— U.S. at ——, 113 S.Ct. at 2749 (quoting *Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094).

**3.** In its amicus curiae brief, the Equal Employment Opportunity Commission (the "EEOC"), urges us to hold that "an employment discrimination plaintiff may survive summary judgment by establishing a prima facie case of discrimination and showing a genuine issue of fact on the question of whether the employer's asserted explanation for its actions is worthy of credence." In other words, the EEOC would like a blanket statement that once evidence of pretext is proffered, that evidence along with the prima facie

case. As the district court stated, Woods has shown that

> [h]e is a member of [the] protected class[ ] ... within the meaning of applicable law. His long experience in the industry and history of largely favorable reviews, and McKew's opinion that he was qualified to fill one of the openings, has created at least a genuine issue as to his ability to meet the employer's legitimate expectations. Woods was denied a supervisory position by FMI. In addition, [FMI] has not offered evidence to remove from dispute the issue whether he is about as qualified as the individuals ultimately hired.

Therefore, we turn our attention to the question of whether FMI has satisfied its burden of production by articulating a legitimate non-discriminatory reason for refusing to hire Woods.

### 2. Stage Two—FMI's Articulated Non-discriminatory Reason

 FMI offers two interrelated reasons for not hiring Woods. Basically, FMI contends that Woods was not qualified to hold a supervisory position in the new and retooled FMI, and that in the alternative, even if he was found to be minimally qualified, that he was not as qualified as those ultimately hired. In support of these claims, FMI introduced the affidavits of Healey, McKew, Wilson, and Kappeler. In his statement, Healey recounted the changes he implemented to make FMI financially competitive in the market and why Woods' prior experience

was not indicative of his ability to competently fill the updated position of productions foreman. Among the changes, he noted that the production foremen in particular were given more responsibility while losing some of their support systems and that "[i]n essence, FMI went from a relatively simple operation to a complex manufacturing system with a production schedule and pre-planning requirements." Affidavit of P. Healey at 8. Healey stated that Woods "had a limited technical knowledge of how brake parts were manufactured.... a limited ability to trouble shoot and generally displayed limited inclination and ability to be innovative." Id. at 5. Healey further opined that Woods lacked "basic supervisory skills, including the ability to plan work, to organize and to implement a production plan, and to motivate employees to carry out the plan," id., and that he "had a great deal of difficulty in planning for and implementing the coordination of the machinery, raw material and workforce assignments necessary to produce the product mix and quantity required of his shift," id. at 9. Attached to Healey's affidavit is a copy of an undated and unsigned evaluation, one which was never shared with Woods because of his accident and subsequent inability to return to work. In the evaluation, both Healey and Shaffer rated Woods' overall performance in the second to lowest category, while awarding Woods the lowest grade with regard to enforcement of company policies, acceptance of responsibility, and decision-making. Healey stated that as a result of this evaluation,

---

case will at all times shield plaintiff from adverse summary judgments. The EEOC cites as authority the following passage from *Hicks*, in which the Court specifically noted that

> [t]he factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) *may*, together with the elements of the prima facie case, suffice to show intentional discrimination.

*Hicks*, —— U.S. at ——, 113 S.Ct. at 2749 (emphasis supplied). We do not agree that the Court's language supports the EEOC's position. Rather, this quoted statement simply makes clear that the Supreme Court envisioned that some cases exist where a prima facie case and the disbelief of a pretext *could* provide a strong enough inference of actual discrimination to permit the fact-finder to find for the plaintiff. Con-

versely, we do not think that the Supreme Court meant to say that such a finding would *always* be permissible. (For example, suppose an employee made out a truly bare-bones prima facie case of age discrimination, and the employer responded that the employee lacked the necessary skills for the job. Suppose also that unrefuted evidence showed that the response was a pretext, because the employer had fired the employee to conceal the employer's own acts of embezzlement. In such an instance, there would be a prima facie case at the outset and a disbelieved pretext, but we think it plain that no reasonable jury could find age discrimination on such a record.) The strength of the prima facie case and the significance of the disbelieved pretext will vary from case to case depending on the circumstances. In short, everything depends on the individual facts.

management intended to place Woods on probationary status prior to his accident.

Kappeler and Wilson stated in their affidavits that based upon their interviews, they found Woods to be an unacceptable candidate for a foreman position with FMI because of his weak supervisory skills and lack of understanding of production processes, such as sequencing and planning. Both men rated Woods as having the poorest supervisory skills of all those interviewed. Affidavit of W. Kappeler at 2; Affidavit of G. Wilson at 1. As noted earlier, McKew also stated that those hired were more qualified. Thus, we find that FMI successfully articulated nondiscriminatory reasons for not hiring Woods, and therefore carried its burden of production.

### 3. Stage Three—Pretext for Discrimination

Finally, we must determine whether Woods has produced sufficient evidence to raise a genuine issue of material fact such as would permit a reasonable factfinder to conclude that FMI did not rely on its articulated reasons in deciding not to hire Woods *and* that FMI unlawfully discriminated against Woods because of his age. Of course, the most obvious and relevant piece of evidence Woods could introduce to contradict FMI's assertion that he was not the best qualified for the position, would be evidence regarding the qualifications of those hired. Woods, however, has neither introduced their respective resumes, nor argued to us that he was unable to obtain this information through the normal discovery channels. In fact, the only evidence produced by Woods to show that the other candidates were not more qualified

appears in his own deposition where he concludes, after admitting that he had no knowledge of the qualifications of those hired, that he had twenty years of experience in the brake manufacturing industry while the other applicants had none. Woods contends that on this basis alone, a reasonable juror might infer that Woods was as qualified or more qualified than those who were hired. Furthermore, he contends that it would be reasonable for a juror to infer, on the basis of this evidence coupled with his prima facie case that the actual reason for FMI's decision not to hire Woods was because he was too old. We do not agree.

Although Woods has presented enough evidence to permit a reasonable factfinder to determine that he was qualified to hold one of the four positions on the basis of 1) his experience, 2) the favorable evaluations and promotions Woods received prior to his accident, and 3) McKew's reluctant admission that Woods was minimally qualified to hold one of the four positions, there is no evidence either to rebut FMI's assertion that those hired were more qualified, or to suggest that FMI's decision not to hire Woods was in any way driven by illegal age animus. Because Woods has failed to present sufficient evidence to permit a reasonable factfinder to infer that FMI's articulated reason was a pretext for unlawful age discrimination, his claim under ADEA must fail.

### B. State Law Claims

#### 1. Mass.Gen.L. ch. 151B

Next, Woods claims that although Mass. Gen.L. ch. 151B [4] employment discrimination

---

4. Mass.Gen.L. ch. 151B § 4 provides in relevant part:

It shall be an unlawful practice:
1. For an employer, by himself or his agent, because of the race, color, ... to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment, unless based upon a bona fide occupational qualification.
. . . .
1B. For an employer in the private sector, by himself or his agent, because of the age of any individual, to refuse to hire or employ or to bar

or to discharge from employment such individual, or to discriminate against such individual in compensation or in terms, conditions or privileges of employment, unless based upon a bona fide occupational qualification.
. . . .
16. For any employer, personally or through an agent, to dismiss from employment or refuse to hire, rehire or advance in employment or otherwise discriminate against, because of his handicap, any person alleging to be a qualified handicapped person, capable of performing the essential functions of the position involved with reasonable accommodation, unless the employer can demonstrate that the accommodation required to be made to the physical or mental

claims are generally analyzed according to the federal burden shifting regime articulated in *McDonnell Douglas,* the Massachusetts Supreme Judicial Court (the "SJC"), has placed a more demanding burden upon the employer than the burden imposed by federal law as interpreted by this circuit. Thus, Woods argues that it was error for the district court to lump the federal and state claims together, and that under the proper standard, FMI's motion for summary judgment must fail.

 It is well established "that the 'state courts are the ultimate expositors of state law' and the federal courts are bound by the constructions placed upon state statutes by state courts absent extreme circumstances." *Rundlett v. Oliver,* 607 F.2d 495, 500 (1st Cir.1979) (quoting *Mullaney v. Wilbur,* 421 U.S. 684, 691, 95 S.Ct. 1881, 1885, 44 L.Ed.2d 508 (1975)). Moreover, it is equally well established that when interpreting Massachusetts discrimination statutes, the SJC "may look to the interpretations of analogous federal statutes, but are not bound thereby." *August v. Offices Unlimited, Inc.,* 981 F.2d 576, 580 n. 3 (1st Cir.1992).

 While the SJC has used the three-part *McDonnell Douglas* analysis as a guide in deciding claims under Mass.Gen.L. ch. 151B, it has been somewhat more severe in its treatment of defendants. In the oft-cited *Wheelock College v. Massachusetts Comm'n. Against Discrimination,* 371 Mass. 130, 355 N.E.2d 309 (1976), the SJC acknowledged that *McDonnell–Douglas* merely required the employer to articulate a legitimate nondiscriminatory reason for its action; but the court went on to say under ch. 151B, "that articulating a reason in cases of this kind requires the employer to produce not only evidence of the reason for its action but also underlying facts in support of that reason."

*Id.* 355 N.E.2d at 313–14. Other Massachusetts cases follow the same course.[5]

All this, however, is academic in the present case because even under the more demanding standard apparently followed in Massachusetts, FMI has done more than merely articulate a reason. It has offered three affidavits in which those concerned set forth their assessment that Woods was not as well qualified as the four men ultimately hired; there is a contemporaneous evaluation of Woods critical of his skills that would presumably be admissible as a business record; and there is an explanation from one of the affiants that colorably explains how Woods could have done an adequate job for a number of years without being especially well qualified for the more demanding tasks contemplated by the new position in the upgraded company. Whether or not these materials taken together are a substantial case for the · company—the case would be a stronger one if more had been said about the qualifications of the four men hired instead of Woods—the materials certainly amount to some evidence in support of the articulated reason.

Finally, it does not matter in the present case whether Massachusetts turns out to follow *Hicks* as construed by the EEOC rather than as we have construed it. Whatever weight a disbelieved reason may have in supporting an inference of discriminatory intent, Woods has not created "a genuine issue of fact on the question of whether the employer's asserted explanation for its actions is worthy of credence." *See* p. 260, n. 3, *supra.* The jury might conclude that Woods was at least minimally qualified based on his past record, but there is no evidence that the employer's asserted explanation—that it found four other men better qualified—is pretextual.

---

limitations of the person would impose an undue hardship to the employer's business.
Mass.Gen.Laws Ann. ch. 151B § 4 et seq., (West 1982 & Supp.1994).

**5.** *See, e.g., McKenzie v. Brigham and Women's Hosp.,* 405 Mass. 432, 541 N.E.2d 325, 326 (1989) (defendant must "advanc[e] lawful grounds for the action taken *and* produce evidence of underlying facts in support thereof")

(emphasis added); *Trustees of Forbes Library v. Labor Relations Comm'n,* 384 Mass. 559, 428 N.E.2d 124, 128 (1981) (employer could not say merely that employee was fired for breaking rules, but also "would have to identify the rules and perhaps the occasions of their violation, and offer some indication that it had considered these violations in its deliberations prior to the discharge").

### 2. Mass.Gen.L. ch. 93 §§ 102 and 103

■ Lastly, Woods claims that the district court erred in finding that his Mass. Gen.L. ch. 93 §§ 102 and 103 claims were preempted by Mass.Gen.L. ch. 151B. Woods' argument, however, is not supported in the caselaw. *See Martin v. Envelope Div. of Westvaco Corp.,* 850 F.Supp. 83, 93 (D.Mass.1994) (collecting federal and state court cases holding that Mass.Gen.L. ch. 151B provides the exclusive remedy in Massachusetts for employment related discrimination claims); *see also DeFazio v. Delta Air Lines, Inc.,* 849 F.Supp. 98, 103 (D.Mass. 1994) (holding that the reasoning of state and federal cases which find Mass.Gen.L. ch. 93 § 102 employment discrimination claims to be preempted by Mass.Gen.L. ch. 151B "applies with equal force to [employment discrimination] claims under Chapter 93, § 103").

In sum, we agree with the district court that

> the adequacy of the remedies afforded under Mass.Gen.L. ch. 151B, the efficiency of a uniform legislative remedy, the importance of giving effect to the procedural prerequisites of Mass.Gen.L. ch. 151B, and the absence of clear guidance from the Massachusetts Supreme Judicial Court, all support the finding that Mass.Gen.L. ch. 151B is the exclusive state law remedy for employment discrimination complaints.

*Woods v. Friction Materials, Inc.,* 836 F.Supp. 899, 908 (D.Mass.1993) (citing *Bergeson v. Franchi,* 783 F.Supp. 713 (D.Mass. 1992)).

### IV.

### CONCLUSION

For the foregoing reasons, the order of the district court granting summary judgment in favor of defendant FMI is

*Affirmed.*