Veilleux v. Perschau                        CV-94-265-B    11/15/95
                    UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF NEW HAMPSHIRE


Michael Veilleux

        v.                                    Civil No. 94-265-B

Detective Jeffrey Perschau


                            O R D E R


        Plaintiff Michael Veilleux was previously charged with
possession of a firearm in violation of 18 U.S.C. § 922(g)(1).
This charge was ultimately dismissed prior to trial after the
court suppressed certain statements Veilleux made to the police
and certain physical evidence obtained by the police as a result
of Veilleux's statements.  Veilleux argues in this action that he
is entitled to damages from the officer who obtained the
statements because, he contends, the officer violated his rights
under the Constitution's Fifth and Fourteenth Amendments.
Defendant Jeffrey Perschau, alleging that he is entitled to
qualified immunity, moves for summary judgment.

## I.  **FACTS**[1]

During the evening of January 19, 1993, Manchester Police Officer William Davies heard what he believed to be a gunshot as he was turning a corner on routine patrol.  He looked in the direction of the sound and saw a man, later identified as Michael Veilleux, run across the street and into an area of three-decker apartment houses.  The officer gave chase over roughly a three block area, by car and then on foot.  At one point he saw Veilleux in an alley, near a dumpster, fumbling with his pocket as if to take something out.  Veilleux fled when he saw that the officer was in pursuit, and disappeared over a backyard fence.  Officer Davies eventually found him a short distance away, lying on the ground next to a vehicle parked at the back of 113 Spruce Street.  Veilleux had been drinking heavily and he scuffled with the officer while being arrested.  No firearm was found on Veilleux.

Suspecting that Veilleux had been in possession of a firearm, Officer Davies and other officers at the scene searched

---

[1]  Veilleux does not dispute the factual findings made by Judge McAuliffe in his March 15, 1994 order suppressing certain statements and evidence in Veilleux's criminal trial.  Therefore, I reproduce those facts verbatim, except that I have substituted "Veilleux" for references to "defendant."

the area near the place of arrest and along the route Veilleux had taken.  The search lasted approximately one hour, but no weapon was found.

The next morning, Veilleux was taken to the Manchester District Court for arraignment on charges of assaulting a police officer and resisting arrest.  While in the holding cell at the courthouse Veilleux asked the guard, Manchester Police Officer William Van Mullen, for permission to make a telephone call.  Officer Van Mullen took Veilleux from the holding cell to a public telephone in the hallway nearby.  Van Mullen stayed with Veilleux for obvious security reasons, and watched and heard him call information to obtain the number of the GTE Sylvania company in Manchester.  Van Mullen then watched and heard Veilleux dial the phone and ask to speak to Diane Hanneford, his girlfriend, who worked at GTE Sylvania.  Van Mullen overheard Veilleux say: "Make a stolen gun report -- think about it -- was in car glove compartment -- in case a kid gets ahold of it."

After he was arraigned, Veilleux was returned to the holding cell.  He engaged in a conversation with one of the other detainees, which also was overheard by Van Mullen.  Veilleux said: ".32 automatic, I'm glad they did not find it.  Was headed from Mike's Pub to British American -- has hollow points, too."

3

Officer Van Mullen called police headquarters and reported what he had overheard to Detective Sergeant Jeffrey Perschau. Perschau reviewed the investigative reports filed by Officer Davies the night before, and then spoke to Davies about the case. Concerned that a loaded weapon could well be in an area accessible to children and others, Perschau drove to the courthouse where Veilleux was being detained. Sergeant Perschau had Veilleux brought to a private office, where they met alone, without counsel present.

Perschau told Veilleux that he wanted to get the gun off the street before a child found it. Veilleux professed ignorance. Perschau persisted, telling Veilleux that he "wasn't interested in arresting him, [but only] in getting the gun off the street." Transcript, Perschau Testimony. Sergeant Perschau acknowledged, at the hearing, that he in fact had no intention of charging Veilleux with any crime related to the gun if he cooperated. When Veilleux continued to profess ignorance, Perschau said that since Veilleux had been through the system many times before, he knew that his statements could be used against him only if Perschau first advised him of his Miranda rights, which, Perschau pointed out, he had not done and had no intention of doing. Veilleux relented. He told Perschau that since he was not going

4

to be charged, he would help the police find the gun. Veilleux then admitted possession, described the pistol, told Sergeant Perschau it was in a black case, and told him he had thrown it on or under a porch during the chase.

Veilleux claimed he could not describe the exact location of the pistol, so Perschau took him to the scene in an effort to refresh his memory, where, in Veilleux's presence, another search was conducted along his route the evening before. Several Manchester police officers assisted in that search. Veilleux claimed continued confusion about the exact location of the weapon (due to his drinking, the darkness, and the chase), and he provided little additional help. The officers searched for about two hours, without success. Veilleux was released on bail.

Later that day, when Sergeant Perschau went off duty, he briefed the new watch commander, Lieutenant Stewart, about the matter. Stewart in turn briefed Officer Suckley, who was about to go on duty and was assigned to that area of the city. Officer Suckley also participated in the unsuccessful initial search for the weapon following Veilleux's arrest. Lieutenant Stewart asked Officer Suckley to search the area again, pointing out that Veilleux said the gun was thrown on or under a porch. Suckley and his partner drove to the area and began another search.

5

Under the rear porch at 113 Spruce Street, near the site of Veilleux's arrest, Officer Suckley discovered the pistol.[2]  It was beyond arm's reach, and Suckley was only able to retrieve it by using his police baton to pull it out.[3]  Officer Suckley agreed that, consistently [sic] with Veilleux's statement, the pistol obviously had been tossed under the porch.

## II.  STANDARD OF REVIEW

### A.  Summary Judgment Standard

Summary judgment is appropriate if, after reviewing the facts in the light most favorable to the nonmoving party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); Woods v. Friction Materials, Inc., 30 F.3d 255, 259 (1st Cir. 1994).  A "genuine" issue is one "that properly can

---

[2]  The pistol was not in a black case as Veilleux had described.  However, a black case had been taken from Veilleux upon his arrest and inventoried at the police station the night before.

[3]  Officer Suckley testified that the distance between the ground and porch floor was about 12 to 18 inches, effectively preventing him from crawling under.

6

be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); accord Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990). A "material issue" is one that "might affect the outcome of the suit" under the applicable legal standard. Anderson, 477 U.S. at 248. The burden is upon the moving party to show the lack of a genuine, material factual issue. Finn v. Consolidated Rail Corp., 782 F.2d 13, 15 (1st Cir. 1986). When a motion for summary judgment is properly supported, the burden shifts to the nonmovant to show that a genuine issue exists. Donovan v. Agnew, 712 F.2d 1509, 1516 (1st Cir. 1983). If the nonmovant fails to offer sufficient factual support to counter the movant's proffer on an element for which the nonmovant bears the burden of proof at trial, all other factual issues become immaterial, and the movant is entitled to summary judgment. Smith v. Stratus Computer, Inc., 40 F.3d 11, 12 (1st Cir. 1994), cert. denied, 115 S. Ct. 1958 (1995).

B.    Qualified Immunity Standard

In Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982), the Supreme Court recognized that public officials performing discretionary functions are entitled to qualified immunity from suit for violations of federal law "insofar as their conduct does

7

not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  A "necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is 'clearly established' at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all."  Siegert v. Gilley, 500 U.S. 226, 232 (1991).  Thus, a court may determine that a defendant is entitled to qualified immunity if either the plaintiff fails to properly assert and support a claim based on the violation of a constitutional right, or the court concludes that the law on which plaintiff's claim was based was not clearly established when the defendants acted.  Id.  See also Febus-Rodriguez v. Betancourt-Lebron, 14 F.3d 87, 91 (1st Cir. 1994) (holding that as a predicate to the qualified immunity inquiry, "a plaintiff must establish that a particular defendant violated the plaintiff's federally protected rights.").

The resolution of a qualified immunity defense presents a legal question for the court.  Elder v. Holloway, 114 S. Ct. 1019, 1023 (1994); Whiting v. Kirk, 960 F.2d 248, 250 (1st Cir. 1992).  Moreover, since the immunity is an immunity from suit rather than merely a defense to liability, it is imperative that

8

such claims be resolved at the earliest possible date after suit
is commenced.  Siegert, 500 U.S. at 232-33.  Thus, I will
determine Perschau's entitlement to immunity on his motion for
summary judgment unless factual disputes material to the issue
require resolution by the jury before I can resolve the legal
questions his motion presents.  See Prokey v. Watkins, 942 F.2d
67, 73 (1st Cir. 1991).

### III.  DISCUSSION

After considering the evidence in the light most favorable
to the plaintiff, I determine that no material facts remain in
dispute and that Veilleux is entitled to judgment as a matter of
law.

To the extent that Veilleux has a claim against anyone based
upon a violation of his constitutional rights, that claim lies
against someone other than Perschau.[4]  Perschau's failure to read
Veilleux his Miranda rights cannot serve as the basis for any
damage claim against Perschau pursuant to 42 U.S.C. § 1983

---

[4]  I assume without deciding that Judge McAuliffe correctly
concluded that Veilleux's statements were involuntary because the
statements were induced by Perschau's misrepresentations
concerning Veilleux's rights and by Perschau's promises that
Veilleux's statements would not be used against him.

because "the remedy for a Miranda violation is the exclusion from evidence of any compelled self-incrimination, not a Section 1983 action."[5]  See Warren v. Lincoln, 864 F.2d 1436, 1442 (8th Cir.), cert. denied, 490 U.S. 1091 (1989); see also Giuffre v. Bissell, 31 F.3d 1241, 1255 (3d Cir. 1994).  Nor do the facts of this case suggest the kind of egregious police behavior that other circuits have deemed to be actionable on a substantive due process theory because the police misconduct "shocks the conscience."  See Mahan v. Plymouth County House of Corrections, 64 F.3d 14, 17 n.4 (1st Cir. 1995) (threat to keep the defendant in a holding cell until he confessed is not so egregious as to give rise to a substantive due process violation).  Perschau's error in this case was to promise something that he could not deliver.  It is a routine and proper law enforcement practice to enter into cooperation agreements with criminal defendants pursuant to which the government agrees not to use a defendant's statements against him in exchange for the defendant's continued cooperation.  No one could suggest that such agreements violate a defendant's constitutional rights when a cooperation agreement is entered

_____

[5]  I do not decide whether, in fact, Perschau was obligated to give Veilleux his Miranda warnings under the circumstances of this case.

10

into voluntarily[6] and the government keeps its promises.  If anyone violated Veilleux's rights, it was the government prosecutors who attempted to use Veilleux's statements against him in violation of Perschau's contrary representations.  Since there is no evidence in the record to suggest that Perschau played any role in the federal government's later attempt to use Veilleux's statements against him, Veilleux's claim against Perschau must fail.

Veilleux's claim is also defective because he offers no evidence to suggest that the statements Perschau elicited from him were ever used against him.  The Fifth Amendment's self-incrimination clause protects a person only from the use of a compelled statement.  Weaver v. Brenner, 40 F.3d 527, 534 (2d Cir. 1994); see also, Giuffre v. Bissell, 31 F.3d at 1255-56 (officer entitled to qualified immunity because law recognizing Fifth Amendment violation even if statements are not used was not "clearly established"); Wiley v. Doory, 14 F.3d 993, 997-98 (4th Cir. 1994), but see Cooper v. Dupnik, 963 F.2d 1220 (9th Cir.), cert. denied, 113 S. Ct. 407 (1992) (coerced confession can

_____

[6] Veilleux does not contend that his agreement to cooperate was involuntary.  Instead, he contends that the statements he made pursuant to that agreement were involuntary because Perschau did not keep his promise not to use the statements against him.

11

violate Fifth Amendment even if statement is not used). There is no evidence in the record to suggest that Veilleux's statements were ever used against him, either directly or indirectly. In the absence of such evidence, his claim cannot survive Perschau's motion for summary judgment.

## IV.   CONCLUSION

In summary, Perschau is entitled to qualified immunity because Veilleux has failed to properly support his claim for damages against Perschau. Defendant's motion for summary judgment (document no. 23) is granted.

SO ORDERED.

_____
Paul Barbadoro
United States District Judge

November 15, 1995

cc:  Paul Garrity, Esq.
     Donald Gardner, Esq.

12