Boisvert v. Sears, Roebuck & Co.        CV-96-495-M    03/24/98
                    UNITED STATES DISTRICT COURT

                       DISTRICT OF NEW HAMPSHIRE


Jeanie T. Boisvert

     v.                                        Civil No. 96-495-M

Sears, Roebuck & Co.


                            O R D E R


     Plaintiff, Jeanie Boisvert, brought suit pursuant to Title

VII, 42 U.S.C.A. § 2000e, against her former employer, Sears,

Roebuck & Co., alleging discrimination in Sears's decisions to

terminate her employment and not to rehire her.  Sears moves for

summary judgment on grounds that Boisvert did not file her

administrative complaint in a timely fashion, and alternatively,

because Boisvert cannot show discriminatory intent on Sears's

part.  For the reasons that follow, Sears's motion for summary

judgment is granted in part and denied in part.



                        **Standard of Review**

     Summary judgment is appropriate if the "pleadings,

depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party

is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(c).  The moving party first must show the absence of a genuine

issue of material fact for trial.  Anderson v. Liberty Lobby,

Inc., 477 U.S. 242, 256 (1986).  If that burden is met, the

opposing party can avoid summary judgment on issues that it must prove at trial only by providing properly supported evidence of disputed material facts that would require trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The court interprets the record in the light most favorable to the nonmoving party and resolves all inferences in its favor.  Saenger Organization v. Nationwide Ins. Assoc., 119 F.3d 55, 57 (1st Cir. 1997).  Thus, summary judgment will be granted if the record shows no trialworthy factual issue and if the moving party is entitled to judgment as a matter of law.  EEOC v. Green, 76 F.3d 19, 23 (1st Cir. 1996).

## Background

Plaintiff Jeanie Boisvert began working at the Manchester Sears store in 1977, moving to the automotive department in April of 1979.  In January 1993, Sears announced a nationwide reorganization of the company that affected Sears automotive departments.  The Manchester Sears automotive department eliminated a number of positions, including sales and service positions, some of which were reorganized into new positions called customer service consultants.  David Emond managed the automotive department in Manchester.  Jeanie Boisvert was notified on February 3, 1993, that her position was being eliminated as part of the reorganization; she was not offered another position at Sears.

Instead, Sears offered Boisvert a reorganization severance incentive package that included an "Associate Job Preference Interview Form." She was required to sign a release before receiving the package's benefits. The job preference form asked for the associate's work history, work preferences, and location preferences. The form also prominently displayed the following statement: "Important: Explain that the company will attempt to find jobs for associates. Because openings are somewhat scarce, it will not be possible to place everyone."

Boisvert immediately met with an attorney to discuss her options related to the package and her employment at Sears. She told the attorney that she thought it was possible that Sears had discriminated against her in the termination of her employment. Nevertheless, Boisvert indicated that her first priority was to work at Sears. Based on the attorney's advice and given her own interests, Boisvert decided to accept the severance package rather than pursue legal action.

Accordingly, Boisvert met with Margaret Otis, of Sears, on February 24, 1993, to complete paper work related to the severance package. During the meeting, Otis completed and signed the "Associate Interview Form" that included a direction to complete the job preference form "if the associate is interested in remaining with Sears." Boisvert remembers that Otis told her that if jobs became available at Sears, she would be considered. Boisvert also remembers that Otis told her she would not have to

reapply for a new position and that she would be eligible for rehire for one year after her employment termination.

Boisvert saw advertisements in the <u>Manchester Union Leader</u> between March and August of 1993, for customer service consultants in the Manchester Sears automotive department. Boisvert did not reapply for the position or contact anyone at Sears because she believed her application was on file at Sears. On August 24, 1993, after seeing recent Sears advertisements and having heard nothing from Sears, Boisvert filled out an employment application — on the assumption that her paperwork must have been lost.[1] She met with Virginia Frain, of the human resources department at Sears, who told Boisvert that she would put the application on David Emond's (the automotive department manager's) desk. Two days later, Boisvert found a message on her answering machine from Frain saying that the sales positions were only part-time and had been filled. Frain also said that she would put Boisvert's application in Emond's file to be considered when positions were available. Boisvert never again heard from Frain, Emond, or Sears.

Boisvert filed a discrimination claim with the New Hampshire Human Rights Commission that was docketed on March 29, 1994.

---

[1]Although Boisvert alleges that she saw advertisements for <u>full time</u> positions, the copies of advertisements she has submitted with her objection to summary judgment appear to offer both full and part time positions in the automotive department.

4

## Discussion

Boisvert alleges that Sears discriminated against her because of her gender both in terminating her employment during the reorganization in February 1993, and again in failing to rehire her when she applied for a customer sales consultant position in August. Sears argues that Boisvert's claims are time barred, since she did not file her administrative claim within 300 days of her termination, that her claim based on wrongful termination is also barred by the release she signed as consideration for the severance package, and that both claims are legally insufficient because she cannot show that Sears discriminated against her.

### A. Timely Filing

Title VII requires a plaintiff to exhaust administrative remedies before filing suit in federal court. <u>Lawton v. State Mutual Life Assurance Co. of America</u>, 101 F.3d 218, 221 (1st Cir. 1996). The general rule requires complaints to be filed with the Equal Employment Opportunity Commission ("EEOC") within 180 days of the discriminatory act, unless the complaint is first filed with an authorized state agency, in which case it must be filed within 300 days. 42 U.S.C.A. § 2000e-5(e); <u>EEOC v. Commercial Office Products Co.</u>, 486 U.S. 107, 110 (1988). The work sharing agreement between the New Hampshire Commission on Human Rights and the EEOC in effect in 1994, when Boisvert filed her complaint, has been construed to provide the full 300-day filing

period.  See Madison v. St. Joseph Hospital, 949 F. Supp. 953, 957-58 (D.N.H. 1996).  Therefore, to be timely, Boisvert must have filed her complaint with the NHCHR no more than 300 days after the date of the alleged discriminatory act.

### 1.    Termination – Count I

The parties agree that Boisvert did not file her complaint with the NHCHR within 300 days after her termination on February 3, 1993.  Boisvert argues, however, that her termination was part of a continuing series of discriminatory acts that included Sears's failure to rehire her in August 1993, which did occur within 300-days preceding her complaint.  Alternatively, Boisvert argues that Sears should be equitably estopped from asserting the limitations period.

### a.  Continuing serial violation.

"A serial violation 'is composed of a number of discriminatory acts emanating from the same discriminatory animus, each act constituting a separate wrong actionable under Title VII.'" DeNovellis v. Shalala, 124 F.3d 298, 307 (1st Cir. 1997) (quoting Jensen v. Frank, 912 F.2d 517, 522 (1st Cir. 1990)).  A plaintiff may "reach back" to recover for actions before the limitations period if she is able to show that at least one of a related series of discriminatory acts occurred within the limitations period and that a reasonable plaintiff in her position would not have understood that she was the victim of

6

discrimination until acts within the limitations period occurred. See Smith v. Bath Iron Works, Corp., 943 F.2d 164, 166 (1st Cir. 1991); Sabree v. United Bhd. of Carpenters and Joiners, 921 F.2d 396, 400 (1st Cir. 1990); see also Messer v. Meno, 130 F.3d 130, 134-35 (5th Cir. 1997); Speer v. Rand McNally & Co., 123 F.3d 658, 663 (7th Cir. 1997).

Each of the series of alleged discriminatory acts must be separate and distinct violations of Title VII. DeNovellis, 124 F.3d at 308. Effects or consequences of discrimination that continue into the limitations period are not separate actionable events that would allow recovery for discriminatory conduct occurring prior to the limitation period. Id. at 309; Muniz-Cabrero v. Ruiz, 23 F.3d 607, 610-11 (1st Cir. 1994). Thus, a plaintiff who alleges discriminatory termination of her employment cannot show a continuing serial violation merely by pointing to her employer's continuing failure to reinstate her employment. Morrison v. Carleton Woolen Mills, Inc., 108 F.3d 429, 443 (1st Cir. 1997). Instead, plaintiff must be able to demonstrate that her employer's subsequent decision not to rehire her was a new and discrete discriminatory action based on different circumstances than existed when she was terminated. See, e.g., Hargett v. Valley Fed. Savings, 60 F.3d 754, 763 (11th Cir. 1995); EEOC v. City of Norfolk Police Dept., 45 F.3d 80, 84 (4th Cir. 1995); Samuels v. Raytheon, 934 F.2d 388, 391 (1st Cir. 1991); Burnam v. Amoco Container Co., 755 F.2d 893, 894 (11th Cir. 1985).

7

Sears's advertising for automotive customer service consultants (Boisvert's comparable job after reorganization) between March and August 1993 suggests changed circumstances from the time Sears terminated Boisvert's employment in February 1993 and told her no positions were available. Thus, evidence exists in the record to create a trial worthy issue as to whether Sears's decision not to rehire Boisvert, following her application in August, was a separate actionable discriminatory event.

Boisvert must also be able to establish, however, that the August hiring decision was "substantially related" to her February termination to link those actions in a continuing serial violation. Sabree, 921 F.2d at 401. To make the necessary connection, the record must support the conclusion that Boisvert did not know and should not have known that Sears was discriminating against her before her August application and Sears's decision not to rehire her. See id. at 402. A plaintiff cannot recover for discrimination that is continuing only because plaintiff knowingly fails to seek appropriate relief. Forsythe v. Microtouch Systems, Inc., 945 F. Supp. 350, 358 (D. Mass. 1996) (quotation omitted).

In this case, the record demonstrates that Boisvert was well aware of the possibility of discrimination by Sears before August 1993. She actually discussed gender discrimination and the possibility of legal action with an attorney in February, the day after Sears notified her that her position would be eliminated in

8

the reorganization.  Indeed, Boisvert candidly acknowledges in her objection to summary judgment that she suspected discrimination when her job was eliminated: "Ms. Boisvert did not file a claim of discrimination at the time of what she believed may have been a discriminatory layoff at the time of that layoff on February 3, 1993."  Plaintiff's Objection at 31.  Accordingly, since plaintiff was aware of her injury (loss of employment) and thought gender discrimination by Sears was the cause of that injury, before the August events, she cannot show that her termination and Sears's failure to rehire her were related and part of an actionable continuing serial violation.

   b.  Equitable estoppel.

Alternatively, Boisvert contends that the doctrine of equitable estoppel allows her claim for discriminatory termination to proceed.  Equitable estoppel may modify a limitations period if "an employee is aware of [her] . . . rights but does not make a timely filing due to [her] reasonable reliance on [her] employer's misleading or confusing representations or conduct."  Kale v. Combined Ins. Co. of America, 861 F.2d 746, 752 (1st Cir. 1988); accord Ruffino v. State Street Bank and Trust Co., 908 F. Supp. 1019, 1040-41 (D. Mass. 1995).  Thus, to obtain equitable estoppel relief, Boisvert must be able to show that her filing with NHCHR was delayed because of Sears's deceptive conduct or because Sears lulled her into believing that she did not need to file a complaint.  See,

9

e.g., Benitez-Pons v. Commonwealth of Puerto Rico, 1998 WL 49092 at *8 (1st Cir. Feb. 12, 1998); American Airlines, Inc. v. Cardoza-Rodriguez, 133 F.3d 111, 124 (1st Cir. 1998).

Boisvert contends that Sears misrepresented the fact that if jobs at Sears became available she would be considered for rehire based on her Associate Job Preference Interview Form, which she completed as part of the severance package. In particular, Boisvert points to the following language in the form as misleading: "Important: Explain that the company will attempt to find jobs for associates. Because openings are somewhat scarce, it will not be possible to place everyone." Even if that language could reasonably be construed to be misleading with respect to Sears's employment actions, the facts Boisvert presents in support of equitable estoppel do not suggest that she reasonably relied on allegedly deceptive conduct by Sears, or that Sears's representations lulled her into delaying her claim to the NHCHR.

Boisvert admits that she was aware that Sears was advertising to fill positions that replaced her job from March until August while, at the same time, no one from Sears contacted her regarding rehire. When she reapplied in August, Ms. Frain told her no positions were then available, although Boisvert had just seen newspaper advertisements for open positions. And, Ms. Frain told Boisvert that she would be considered later. Boisvert never heard from Sears again. In November, after she learned that Sears had had many openings in the automotive department,

10

Boisvert says she realized she would not be considered for a job while Emond remained as the manager.

The 300-day limitations period, counting from February 3, 1993, did not expire until the beginning of December. Before that time, Boisvert had experienced a continuing pattern — Sears made no effort to rehire her despite the apparent availability of suitable positions and her interest in being rehired. By November, Boisvert says she knew she would not be rehired. Nevertheless, Boisvert did not file an administrative complaint with the NHCHR until March 26, 1994. Boisvert has shown no triable issue as to whether she was aware, at least by November, that she was not going to be rehired despite Sears's prior representations.

Based on the factual record presented here, Boisvert did not file her claim for discriminatory termination with the NHCHR within the time allowed, and she has not shown that genuinely disputed material factual issues exist with respect to either a continuing serial violation or equitable estoppel theory. Accordingly, given the undisputed material facts Sears is entitled to summary judgment as a matter of law with respect to Boisvert's termination claim (Count I) in her complaint.

## 2. Failure to Rehire – Count II

Sears's decision not to hire Boisvert following her application in August 1993 was a separate and discrete act of alleged discrimination that permits a separate claim. See

11

discussion in part A.1.a. above.  The parties agree that Boisvert filed her claim with the NHCHR within 300 days of Sears's decision not to rehire her in August 1993.  Thus, Boisvert's claim of discrimination in hiring, Count II of her complaint, is not barred by the administrative limitations period.

## B.    Discrimination

Under Title VII, it is unlawful "for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C.A. § 2000e-2(a)(1).  Sears contends that Boisvert cannot prove that she was discriminated against on the basis of sex when Sears did not rehire her in August 1993, as she alleges.  To survive summary judgment, Boisvert must be able to show, based on sufficient probative evidence in the record, that Sears's decision not to rehire her was motivated by discriminatory intent.  See DeNovellis, 124 F.3d at 308.

When a plaintiff cannot present direct evidence of discriminatory animus in support of her Title VII claim, the court employs the McDonell Douglas[2] three-step framework to analyze whether defendant intentionally discriminated against her.  Smith v. Stratus Computer, Inc., 40 F.3d 11, 15 (1st Cir. 1994).  At the first step, plaintiff must establish a prima facie

---

[2]McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

12

case of discrimination, which is not an especially burdensome requirement, and, if successful, the court will presume that the employer's challenged action was intentionally discriminatory. Woods v. Friction Materials, Inc., 30 F.3d 255, 260 (1st Cir. 1994). The burden of production, although not the burden of proof, then shifts to the employer to show a nondiscriminatory reason for the challenged action. Id. If the employer is successful, the presumption of discrimination vanishes completely. Id. At the third stage, plaintiff must "introduce sufficient evidence to support two additional findings: (1) that the employer's articulated reason for the job action is a pretext, and (2) that the true reason is discriminatory." Id.

A plaintiff's prima facie case consists of four elements: that "(1) s/he is a member of a protected class, (2) s/he applied and was qualified for the position in question, (3) that despite his/her qualifications, s/he was rejected, and (4) that, after rejection, the position remained open and the employer continued to seek applications from persons of the complainant's qualifications." Woods, 30 F.3d at 259. Boisvert has presented sufficient record support for each of the four elements, as Sears assumed that she would, to establish a prima facie case. Thus, Boisvert has met her initial burden, for purposes of the present summary judgment motion, to create a presumption of discriminatory intent.

Sears articulates two nondiscriminatory reasons for not rehiring Boisvert, supported by an affidavit from the automotive

13

services manager, David Emond. Emond says he did not rehire Boisvert because he decided not to rehire any employee who was terminated during the reorganization of the department, and because he had not been "completely satisfied" with Boisvert's work performance. As Sears has satisfactorily rebutted the presumption of discrimination by articulating non-discriminatory reasons for its employment decisions, Boisvert "must produce sufficient evidence, direct or indirect, to show that the reasons advanced by the employer constitute a mere pretext for unlawful discrimination." Woods, 30 F.3d at 260.

Boisvert responds that both of Sears's asserted reasons for not rehiring her are pretextual. She presents evidence suggesting that a mechanic, Roger Bucker, was rehired after being terminated during the reorganization, and she references Emond's deposition testimony, where he said that he was not aware of restrictions on rehiring employees who had been terminated under the severance program. In addition, the job preference form, which Boisvert completed, indicated that Sears's stated policy was actually to rehire terminated employees. Based on the present record, Sears did not have a policy against rehiring terminated employees. To the contrary, Sears implied that those employees would be rehired if possible. Thus, Sears's policy explanation, offered by Emond, is contradicted by the record and could be found to be pretextual.

With respect to her work at Sears, Boisvert submits record evidence of her good performance. Margaret Otis testified in her

14

deposition that she observed Boisvert in her interaction with customers while working in the automotive department and found Boisvert's performance to be excellent. When Boisvert's supervisor, Jim Mihail, was asked during the termination process to provide names of employees with performance problems, he named three employees, but not Boisvert. He also said in his deposition that he would have rehired her if her position still existed in the department. The store manager, Richard Cunniff, said in his deposition that as far as he knew, Boisvert met the performance expectations of her job while she was at Sears. Although Emond may well have had a different experience in his supervision of Boisvert, the incidents he cites are insufficient to counter the evidence in Boisvert's favor. Boisvert has sufficiently countered Emond's other stated reason for not rehiring, i.e. her poor work performance, to create a triable issue of pretext.

Having raised a factual dispute as to Sears's reasons for not rehiring her, Boisvert must be able to show that the reasons given were pretexts for discrimination. To prove discrimination in a disparate treatment case, plaintiff must be able to show that she was treated differently from others who were "situated similarly in all relevant aspects." Smith, 40 F.3d at 17 (internal quotation and emphasis omitted). Boisvert points to the hiring record in the automotive department between February 1993 and March 1994, during which time Emond hired fifteen men and no women to fill customer service consultant positions.

15

Since it is undisputed that Boisvert was qualified for the position of customer service consultant, Boisvert plausibly infers that she was not hired because of her sex. Boisvert also contends that Emond's misrepresentation, through Virginia Frain's message to Boisvert after her August application, to the effect that she would be considered for positions in the "next go around" is evidence of Emond's effort to conceal his true unlawful discriminatory motive, and supports an inference of intentional gender discrimination.

An inference of intentional discrimination is permitted, based on the circumstances of a plaintiff's prima facie case combined with a belief that the employer's reasons are pretextual, particularly if the evidence supports a suspicion that the employer lied about the reasons for not hiring plaintiff. St. Mary's Honor Society v. Hicks, 509 U.S. 502, 511 (1993); accord Byrd, 61 F.3d at 1031. Emond's articulated reasons for not rehiring plaintiff could be found to be pretextual and untrue (the supposed no rehire policy is directly contradicted by Sears's actions and representations to Boisvert). In addition, the record evidence supports at least a suspicion that Emond directed Frain to mislead Boisvert about her chances of being rehired by Sears. Based on the record here, Boisvert has presented a triable issue as to whether Sears, acting through Emond, did not rehire her for unlawful discriminatory reasons.

16

Accordingly, Sears has not shown that the undisputed facts support summary judgment in its favor with respect to Boisvert's claim of discriminatory refusal to rehire her.

## C.    Motion to Strike

Sears filed a motion to strike four affidavits and one exhibit submitted by Boisvert in support of her objection to its motion for summary judgment.  None of the challenged materials was necessary to decide the present motion, and none of the challenged materials was considered.  The motion to strike is therefore denied as moot.  The court assumes that counsel will resolve any remaining discovery disputes in light of the obligations imposed by the Federal Rules of Civil Procedure, the local rules of this court, and the Litigation Guidelines promulgated by the New Hampshire Bar Association.  To the extent counsel cannot amicably and responsibly resolve remaining discovery issues, those issues may be raised by appropriate motion, but the motions will be carefully scrutinized for compliance with the above cited standards.

## Conclusion

For the foregoing reasons, defendant's motion for summary judgment (document no. 28) is granted with respect to Count I of plaintiff's complaint, and denied as to Count II.  Defendant's motion to strike (document no. 33) is denied.

17

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

March 24, 1998

cc:  Heather M. Burns, Esq.
     Julie Ann Moore, Esq.
     Byry D. Kennedy, Esq.

18